**TRANS–ORIENT MARINE CORP., Plaintiff,**

v.

**STAR TRADING & MARINE, INC. and the Republic of the Sudan, Defendants.**

**No. 86 Civ. 5823 (WCC).**

United States District Court, S.D. New York.

March 1, 1990.

Walker & Corsa, New York City, for plaintiff; Kirk M.H. Lyons, of counsel.

Odin, Feldman & Pittleman, P.C., Fairfax, Va.; Sally Ann Hostetler, Dexter S. Odin, of counsel, Kleinberg, Kaplan, Wolff & Cohen, P.C., New York City; Norris D. Wolff, of counsel, for defendants.

**620**

WILLIAM C. CONNER, District Judge:

Defendant Republic of the Sudan moves this Court to dismiss the complaint for failure to state a claim or for summary judgment. It claims that the new Republic of the Sudan, as successor state, is not liable for the alleged breach of a five-year exclusive agency contract entered into by the prior sovereign state of Sudan.[1] Defendant further asserts that a fundamental change in circumstances relieves it of any prior contractual obligations.

## FACTS

Plaintiff's cause of action for breach of contract arises from an alleged five-year exclusive agency agreement to represent the Sudan in the United States P.L. 480 program.[2] The alleged October 14, 1983 agreement was effective from October 1, 1984 through September 30, 1989. In April 1985, a military coup deposed the then head of state, declaring a state of emergency and suspending the constitution. A twelve-month transitional military regime followed, which was then replaced by a civilian coalition government. The name of the state was changed from the Sudan to the Republic of Sudan. In June 1989, there was another military coup in which the present military regime overthrew the former civilian administration and suspended the constitution. *See Africa: South of the Sahara 1990*, Regional Surveys of the World (19th ed.) pgs. 953, 957, 959, 973 (*"Africa: South of the Sahara 1990"*). Both parties agree that the Republic of the Sudan is a foreign sovereign state.

On January 3 and 4, 1985, the then Sudanese government sent letters advising plaintiff that a new agent, CIDCO, had been appointed to handle the contracts under P.L. 480 and that CIDCO would select the shipping agent. This alleged termi-nation of the then-executory contract did not provide the one-year termination notice required under the original contract. Since January 1985, the Sudan has awarded CIDCO a continuing series of contracts to handle the wheat and wheat flour transportation under P.L. 480, in alleged violation of plaintiff's exclusive agency contract. No additional facts are relevant to the present motion.

## DISCUSSION

The present Sudanese government asserts that it is not liable for the contractual obligations of the prior sovereign, pointing to the two military coups of 1985 and 1989 to sustain its position that both the 1985 military regime and the present administration are successor states and that there has been a fundamental change in circumstances. Plaintiff contends that neither the 1985 regime nor the present regime is a successor state but that they represent mere changes in government which do not relieve the present regime from the prior government's contractual obligations. Plaintiff further argues that even if either regime is a successor state, they have ratified the prior government's contract. For the following reasons, summary judgment is denied.

A party seeking summary judgment must demonstrate that "there is no genuine issue as to any material fact." Fed.R. Civ.P. 56(c); *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475

---

1. Having adjourned the trial to enable defendant to assert this defense, the Court does not now consider alternative defenses raised here for the first time.

2. P.L. 480 was originally enacted by the 83rd Congress as the Agricultural Trade Development and Assistance Act of 1954. 7 U.S.C. § 1761 *et seq.* Title I, concessional sales, permits developing nations to purchase United States agricultural products with low interest rates and long repayment periods. Administered by the United States Department of Agriculture, the program often involves the use of transportation agents representing the recipient country.

U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The non-moving party must establish that there is a "genuine issue for trial." *Id.* at 587, 106 S.Ct. at 1356. "In considering the motion, the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight,* 804 F.2d at 11. The inquiry under a motion for summary judgment is thus similar to that under a motion for a directed verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986).

■ Whether a new administration may terminate the executory portions of its predecessor's contracts is based on the succession of state theory. Restatement (Third) of Foreign Relations Law §§ 209, 210 ("Restatement"). International law sharply distinguishes the succession of state, which may create a discontinuity of statehood, from a succession of government, which leaves statehood unaffected. It is generally accepted that a change in government, regime or ideology has no effect on that state's international rights and obligations because the state continues to exist despite the change. *Id.* at § 208, Comment a. As stated by the Second Circuit Court in *Lehigh Valley R. Co. v. State of Russia,* 21 F.2d 396, 401 (2d Cir.), *cert. denied,* 275 U.S. 571, 48 S.Ct. 159, 72 L.Ed. 432 (1927):

A monarchy may be transformed into a republic, or a republic into a monarchy; absolute principles may be substituted for constitutional, or the reverse; but, though the government changes, the nation remains, with rights and obligations unimpaired.

■ However, where one sovereign succeeds another, and a new state is created, the rights and obligations of the successor state are affected. Restatement § 207. The rule with regard to contracts with private foreign individuals involves a balancing of competing interests. While the successor state is permitted to terminate existing contracts originally executed by the former sovereign and the private party, the successor state is liable to that party only for any amount due him as of the date of the change of sovereignty. *Id.* at § 209. But if the contract is totally executory, the successor state is released from the contract. *See* O'Connell, *State Succession in Municipal Law and International Law,* p. 298 (Cambridge 1967); Wilkinson, *The American Doctrine of State Succession* (Greenwood Press 1975).[3]

■ The Restatement of Foreign Relations Law describes a successor state to include:

a state that wholly absorbs another state, that takes over part of the territory of another state, that becomes independent of another state of which it had formed a part, or that arises because of the dismemberment of the state of which it had been a part.

Restatement § 208, Comment b. Careful study of defendant's submission reveals that the state of Sudan has not 1) wholly absorbed or been wholly absorbed by another state; 2) partly taken over or been partly taken over by another state; 3) become independent from another state of which it had formed a part; or 4) arisen out of dismemberment of a state of which it had been a part since the date of plaintiff's contract. Under the Restatement's definition, the state of Sudan has remained the same entity since its independence in 1956.

Defendant's own exhibit in support of its motion substantiates that only a change in government was effected by the two military coups:

Since achieving independence, the Sudan (renamed Sudan in 1975 and redesignated the Republic of the Sudan in December 1985, having been the 'Democratic

**3.** Plaintiff asserts and defendant does not deny that local or domestic law controls the underlying merits of this contract action, citing *United*

*States v. National City Bank of N.Y.,* 90 F.Supp. 448, 453 (S.D.N.Y.1950).

Republic' since May 1969) has had *seven regimes:* a civilian parliamentary government, which lasted until November 1958; a military regime, which, under General Ibrahim Abboud, continued in office until it was overthrown by a civilian coup in October 1964, a second civilian regime, which was then installed and lasted until May 1969, when the regime of Colonel (later Field Marshall) Gaafar Nimeri came to office, a 12–month transitional military regime, ushered in by the *coup of April 1985,* which deposed Nimeri; a civilian coalition government which followed the general election of April 1986; and the *present military regime which overthrew the civilian administration on 30 June 1989* [Emphasis added].

*Africa, South of the Sahara 1990,* p. 953 (Defendant's Exhibit A). Accordingly, the only changes in the Sudan since its independence in 1956 have been in the government, with seven distinct successive administrations. But there has been only one state.

Defendant unpersuasively emphasizes various aspects of the relevant transitions to reflect the creation of a new state: that the transitions resulted by way of military coups as opposed to routine, constitutional processes, the re-naming of the nation, the suspension of the constitution, the closing of the borders and the declaration of a state of emergency. Treatises, as well as applicable case law, demonstrate that such features do not effect a succession of state. In her treatise on International Law, Whiteman states:

> There is also another old and fully recognized principal of general international law under which the identity of *a state in international law is not effected by unconstitutional changes in government, whether brought about by revolution or coup d'etat.* This rule is so unanimously recognized by writers since Grotius and Bynkershoek, by the practice of states, as illustrated by the well-known London Protocol of February 19, 1831, and by national and international court decisions, that it is superfluous to give quotations. *It is irrelevant how far-reaching the revolutionary changes may be; as is also the change of the name of the state.*

> If the territory in question remains, in its entirety, territory of one state, and if the continuity of the existence of the state under international law is not interrupted, it is not possible to assume that one state had ceased to exist and another state has come into existence on the same territory. *It is the same state which continues to exist, but under a new government which came into power by revolution or coup d'etat* [Emphasis added].

Whiteman, *Digest of International Law,* Vol. 2, pgs. 759, 764 (1963) (citations omitted).

Furthermore, the Restatement's comparative chart in a Recognition of States section illustrates that a change in government by armed force or fraud, as well as institution of another regime following a civil war, leaves "no question of the existence of the state." Restatement § 203, Reporters' Note 3. It offers as contemporary examples of mere changes in government: Pinochet's 1973 ouster of Allende in Chile, Franco's 1936–39 takeover of Spain, and the Communist revolution in China. *Id.*

The seminal decision on the distinction between a succession of state versus a change in government is the U. S. Supreme Court decision in *The Sapphire,* 78 U.S. (11 Wall.) 164, 20 L.Ed. 127 (1871). In *The Sapphire,* the Supreme Court considered whether a lawsuit begun by the French Emperor, Napoleon III, was abated by the overthrow of the Emperor during the course of litigation. In holding that the action was not extinguished, the Supreme Court stated that, "on the [Emperor's] deposition the sovereignty does not change, but merely the person or persons in whom it resides.... A change in such representative works no change in the national sovereignty or its rights." 78 U.S. at 168, 20 L.Ed. at 130; *cf. Guaranty Trust Co. of N.Y. v. United States,* 304 U.S. 126, 58 S.Ct. 785, 82 L.Ed. 1224 (1938).

This principle has been followed by this Circuit wherein the Second Circuit Court held that:

> the rights and liabilities of a state are unaffected by a change either in the form or personnel of its government, however accomplished, whether by revolution or otherwise. No other doctrine is thinkable, at least among nations which have any conception of international honor.

*Agency of Canadian Car and Foundry Co. v. American Can Co.*, 253 F. 152, 157 (S.D.N.Y.1918), *modified on other grounds*, 258 F. 363 (2d Cir.1919). *See Carl Marks & Co., Inc. v. Union of Soviet Socialist Republics*, 665 F.Supp. 323, 340–41 (S.D.N.Y.1987), *aff'd*, 841 F.2d 26 (2d Cir.), *cert. denied*, 487 U.S. 1219, 108 S.Ct. 2874, 101 L.Ed.2d 909 (1988); *Lehigh Valley R.R. Co. v. State of Russia*, 21 F.2d 396, 401 (2d Cir.1927); *United States v. National City Bank of N.Y.*, 90 F.Supp. 448, 452 (S.D.N.Y.1950).[4]

While defendant is correct that these cases do not construe contractual obligations, but instead discuss the identity of a state in other contexts, the cases nevertheless distinguish a new state from a mere new government. Other cases indeed determine the obligations of the new government. In *United States v. National City Bank of New York*, 90 F.Supp. 448, 452 (S.D.N.Y.1950), the district court held the post-revolutionary State of Russia liable on the treasury notes of the pre-revolutionary state. Similarly, in *Jackson v. People's Republic of China*, 550 F.Supp. 869, 872 (N.D.Ala.1982), *dismissed on other grounds*, 596 F.Supp. 386 (N.D.Ala.1984), the district court determined that the People's Republic, as successor government to the Imperial Chinese Government, was successor to its obligations, specifically, payment of principal due on the prior government-issued bonds. The law is clear that the obligations of a state are unaffected by a mere change in government. It is of no consequence that the Sudan allegedly breached an executory contract. The distinction between executed and executory contracts only applies where there has been a succession of state. The military coups of 1985 and 1989 did not effect a succession of state of the Sudan but merely changed the state's governing body, leaving the state's obligations undisturbed.

Defendant's alternative claim that a fundamental change of circumstances has occurred since October, 1983 relieving it of any prior contractual obligations is unsubstantiated. Defendant presents no explanation as to what "circumstances constituted an essential basis of the consent of the parties to be bound by the agreement" or what changes have "radically transform[ed] the extent of obligations still to be performed under the agreement." Restatement § 336. Having failed to demonstrate a fundamental change in circumstances, the present government is therefore contractually obligated to plaintiff under the October 14, 1983 five-year extension of agency contract if its predecessor indeed breached that agreement.

## CONCLUSION

For the reasons discussed above, summary judgment is denied. Plaintiff is directed to brief the additional grounds for dismissal or summary judgment raised in defendant's motion papers by March 19, 1990. Defendant shall reply by March 26, 1990.

SO ORDERED.

---

**4.** Defendant claims that plaintiff's request for information concerning defendant's legal representation of the present government of Sudan acknowledges that the new government is not bound by the executory contracts of the prior government. Plaintiff's action, taken before this issue was thoroughly briefed, does not concede such a principle espoused by defendant.