**VJK PRODUCTIONS, INC., Plaintiff,**

v.

**FRIEDMAN/MEYER PRODUCTIONS, INC., Defendant.**

**No. 81 Civ. 4262 (JES).**

United States District Court,
S.D. New York.

June 14, 1983.

**918**

Hall, Dickler, Lawler, Kent & Howley, New York City, for plaintiff; Paul G. Whitby, Armin R. Baier, Jr., New York City, of counsel.

Gold, Farrell & Marks, New York City, for defendant; Thomas R. Farrell, Raymond J. Heslin, Richard L. Wertis, New York City, of counsel.

## OPINION & ORDER

SPRIZZO, District Judge.

Plaintiff, VJK Productions, Inc. ("VJK"), a California corporation engaged in the business of furnishing the services of Victor J. Kemper ("Kemper"), a motion picture director of photography, commenced this action against Friedman/Meyer Productions Ltd. ("Friedman/Meyer"), a New York corporation which produces motion pictures, alleging that Friedman/Meyer breached its employment contract with VJK.

Plaintiff alleges that, on a date between September 1980 and November 1980, VJK entered into a written employment agreement with Friedman/Meyer pursuant to which VJK agreed to furnish the services of Victor J. Kemper as Director of Photography for defendant's proposed motion picture production, "Brenda Starr" ("Kemper Contract"). Pursuant to the terms of the Kemper Contract, which was negotiated on plaintiff's behalf by Kemper's agent, Phil Gersh ("Gersh"), Kemper was to render services to defendant at a salary of $6,500 per five day work week for the longer of (1) the time required to complete the principal photography on the film or (2) a minimum period of twelve consecutive weeks commencing January 12, 1981. The Kemper Contract expressly provided that Kemper's services were retained on a "pay or play" basis, a term understood in the industry to mean that Kemper was to be paid for the minimum twelve week period whether or not the film went forward. (Trial Transcript at 17–18 ("Tr. ___")).

On March 7, 1980, prior to entering into the Kemper Contract, Friedman/Meyer entered into a written agreement with International Film Investors, L.P. ("IFI") whereby IFI agreed to provide partial financing for defendant's production of "Brenda Starr," and to assist Friedman/Meyer in obtaining the balance of the necessary financing (the "Financing Agreement"). In consideration therefor, IFI was to receive a share of the film's profits. (Plaintiff's Exhibit 7.)

At the time it entered into the Financing Agreement, Friedman/Meyer informed IFI in writing that a federal grand jury was investigating certain of Friedman/Meyer's transactions, which transactions, while unrelated to the "Brenda Starr" production, involved its chairman, Stephen R. Friedman, and its president, Irwin Meyer (the "Indictment Letter"). In the Indictment Letter Friedman/Meyer and IFI agreed that, in the event Friedman or Meyer was indicted, IFI would have the right to assume all of Friedman/Meyer's production functions relating to "Brenda Starr." In addition, the Indictment Letter contained an irrevocable power of attorney from Friedman/Meyer permitting IFI to assign to itself all of Friedman/Meyer's rights to the motion picture, subject to the rights of any third party. (Plaintiff's Exhibit 8.)

On November 14, 1980, a federal grand jury returned an indictment naming Friedman and Meyer as defendants in a criminal action. Ten days later, International Film Investors, Inc., managing partner of IFI, notified Friedman/Meyer that it was exercising its right under the Indictment Letter to assume the functions of the production company. Pursuant to the power of attorney granted by Friedman/Meyer, IFI executed an assignment to itself of all of Friedman/Meyer's right, title and interest to the film, including all contract rights. It

thereupon ceased advancing funds to Friedman/Meyer. (Tr. at 79–81.)

Plaintiff alleges that neither VJK nor Kemper was ever advised by Friedman/Meyer that the production would not go forward. It further alleges that, on January 12, 1981, it demanded payment of Friedman/Meyer pursuant to the terms of the Kemper Contract but that, notwithstanding Kemper's readiness, willingness and ability to perform, Friedman/Meyer wrongfully refused to make payment. (Tr. at 77–80.)

Plaintiff commenced this action seeking $72,000 in damages, which he alleges represents an amount equal to the twelve unpaid weekly installments, plus interest on that sum from January 12, 1981.[1] It contends that it has made all reasonable efforts to mitigate damages. (Tr. at 26–28.)

Friedman/Meyer first argues that its obligation to perform never accrued because Kemper and Gersh impliedly agreed to a condition precedent to the Kemper Contract, to wit, that IFI would provide funds to Friedman/Meyer for "Brenda Starr's" production costs, including the costs of employing Kemper, which condition precedent was never satisfied. As evidence of Gersh's, and through him, Kemper's implied agreement, Friedman/Meyer alleges that it told Gersh that financing for the production costs of "Brenda Starr" was being provided by IFI, and that IFI had to approve all contracts it entered into in connection with the film.[2] Friedman/Meyer seeks to excuse its failure to request that the alleged condition precedent be inserted in the Kemper Contract by claiming that it did not anticipate that IFI would take over the film.

Plaintiff denies that any implied condition precedent to the Kemper Contract ever existed and argues further that, in any event, the Court may not properly consider evidence of any such implied condition precedent since it would contradict the express "pay or play" provision of the Kemper Contract.[3] This contention has merit.

When parties to an agreement express their understanding in a written contract with the intention that it embody their full and final agreement,[4] the Parol Evidence Rule generally bars the introduction of evidence of any prior or contemporaneous understanding if that evidence would vary or contradict the terms of the writing. *Mitchill v. Lath,* 247 N.Y. 377, 160 N.E. 646 (1928). While one of the exceptions to the Parol Evidence Rule permits the introduction of evidence to prove an oral agreement precedent to the contract, that exception is inapplicable if the alleged condition precedent contradicts the express language of the writing. *Hicks v. Bush,* 10 N.Y.2d 488, 180 N.E.2d 425, 255 N.Y.S.2d 34 (1962); *Tropical Leasing, Inc. v. Fiermonte Chevrolet, Inc.,* 80 A.D.2d 467, 439 N.Y.S.2d 566 (4th Dep't 1981). That is clearly the case here.

Irwin Meyer, defendant's president, testified that, at the time he executed the Kemper Contract, he understood the term

---

1. While the *ad damnum* clause in plaintiff's complaint seeks judgment in the amount of $72,000.00, the Court observes that $6,500.00 per week multiplied by twelve weeks equals $78,000.00. Since Kemper testified at trial that he has received no monies under this agreement, Tr. at 24, the Court assumes that plaintiff has made an error in calculation and therefore deems the complaint amended accordingly.

2. IFI approved the hiring of Kemper and the terms of his contract.

3. Since this was a non-jury trial, the Court received the evidence at trial.

4. The Court has no difficulty in concluding that the Kemper Contract was intended to embody the full and final agreement of the parties.

Subparagraph (d) of the Kemper Contract originally contained a clause which provided, in pertinent part: "It is contemplated that a formal employment agreement shall be executed by the parties incorporating all of the foregoing provisions and such other terms as are customarily included in agreements of this type, but until such agreement is executed, this Memorandum Agreement shall be a binding agreement between the parties." This clause is crossed out, the word DELETE is printed boldly across the body of its language and the changes are initialled by the parties who executed the agreement, to wit, Irwin Meyer, President of Friedman/Meyer, and Victor J. Kemper, President of VJK.

"pay or play" to mean that Kemper was to be paid for his services whether or not the film went forward. (Tr. at 50.) That interpretation of the contract by defendant's own president is flatly inconsistent with any alleged implied condition that Kemper's right to payment depended upon Friedman/Meyer's obtaining financing from IFI.

Even assuming arguendo that the evidence proffered by Friedman/Meyer were properly admissible, the Court concludes that it would be wholly insufficient to prove the existence of the alleged implied condition precedent. First, the Court rejects the testimony of Irwin Meyer that he told Gersh that financing for the production costs of "Brenda Starr" was being provided by IFI and accepts as true Gersh and Kemper's testimony that they neither inquired into nor knew of the arrangements. (Deposition of Irwin Meyer at 91; Deposition of Philip Gersh at 9–12, 18–19; Testimony of Victor Kemper, Tr. at 31–32.) Secondly, even assuming arguendo that plaintiff knew of the financing arrangements, it does not follow that it agreed that receipt of such financing would be a condition precedent to the Kemper Contract. Indeed, the Court finds that, had the parties in fact agreed to such a condition, it would have been included in the Kemper Contract. Defendant's claim that it did not expect IFI to take over the film is not persuasive. The Indictment Letter, which was executed prior to the time that the Kemper Contract was made, clearly demonstrates that both the assignment to IFI and the takeover were reasonably foreseeable by Friedman/Meyer at the time that it entered into the Kemper Contract.

Defendant next argues that, even assuming arguendo that the Kemper Contract required it to pay plaintiff whether or not it obtained financing, it still may not be found liable because the assignment to IFI (1) rendered performance impossible and (2) frustrated the purpose for which it entered into the contract.

The defense of impossibility of performance is clearly without merit. That defense is available only when the inability to perform results from an act of God, *vis major*[5] or operation of law. *See e.g., 407 61st Garage v. Savoy Fifth Avenue Corp.,* 23 N.Y.2d 275, 281–82, 244 N.E.2d 37, 41, 296 N.Y.S.2d 338, 343–44 (1968). The defense is not available where, as here, the promisor is responsible for the event which makes performance impossible, *Lowenschuss v. Kane,* 520 F.2d 255, 265–66 (2d Cir.1975), or the event which renders the performance impossible could have been anticipated and provided for in the contract, *Ogdensburg Urban Renewal Agency v. Moroney,* 42 A.D.2d 639, 641, 345 N.Y.S.2d 169, 171 (3d Dep't 1973).

Friedman/Meyer is clearly responsible for the alleged impossibility of performance because the indictment which triggered the assignment was a consequence of the criminal conduct of its principals. It may not, therefore, now profit from its own wrongdoing by escaping liability for its contractual breach. Moreover, defendant surely could and should have anticipated that IFI would exercise its rights under the Indictment Letter and it could and should have provided for such a contingency in the Kemper Contract. This is especially true since the Kemper Contract was executed after Friedman/Meyer and IFI had agreed to the terms of the Indictment Letter.

Friedman/Meyer also contends that, since the assignment operated to deprive it of any benefits it might otherwise have obtained as a result of the film's production, its purpose in entering into the Kemper Contract was frustrated and its failure to perform should be excused. While frustration of purpose is a legitimate defense to nonperformance when, after a contract is made, a party's principal purpose is substantially frustrated *without his fault,* Restatement (Second) of Contracts § 265 (1979), it is not available where, as here, the

---

**5.** *Vis major* is a loss which proximately results from natural causes and which could have been prevented by the exercise of prudence, dili-
gence and care. *Vis major* is clearly inapplicable here since defendant's failure to perform was not a result of natural causes.

defendant itself, through the conduct of its principals, was responsible for the events which transpired. *Compare Alfred Marks Realty Co. v. Hotel Hermitage Co.,* 170 A.D. 484, 156 N.Y.S. 179 (2d Dep't 1916).

■ Moreover, the frustration of purpose defense is not available where, as here, the event which allegedly frustrated the purpose of the contract, i.e. the assignment, was clearly foreseeable. Under such circumstances, Friedman/Meyer is deemed to have assumed the risk that its purpose in entering into the Kemper Contract would be frustrated. *Glidden v. Hellenic,* 275 F.2d 253 (2d Cir.1960).

Friedman/Meyer also claims that the assignment of its right, title and interest in "Brenda Starr" to IFI constituted a novation which had the effect of extinguishing its liability under the Kemper Contract and substituting IFI as the party to which Kemper was required to look for performance.

■ The elements of a novation are (1) a previously valid obligation; (2) an agreement of all parties to the new contract; (3) extinguishment of the old contract; and (4) a valid new contract supported by consideration. *Town & Country Linoleum & Carpet Co. v. Welch,* 56 A.D.2d 708, 392 N.Y.S.2d 517 (4th Dep't 1977); *Kinsella v. Merchants National Bank & Trust Co. of Syracuse,* 34 A.D.2d 730, 311 N.Y.S.2d 759 (4th Dep't 1970).

■ Defendant's only evidence that plaintiff consented to a novation is Gersh's alleged silence in the face of IFI's assurances that it would assume all of Friedman/Meyer's obligations under the Kemper Contract. This is not sufficient. No other evidence is cited in support of defendant's novation contention. While consent to a novation need not be express and may be implied from all the facts and circumstances, *Kinsella,* 34 A.D.2d at 730, 311 N.Y.S.2d at 761; *Schloss Bros. & Co. v. Bennett,* 260 N.Y. 243, 183 N.E. 376 (1932), the Court finds that defendant has failed to establish that plaintiff agreed to treat the assignment as a new contract or that it consented to the extinguishment of the Kemper Con-

tract. Accordingly, the Court finds that there was no novation.

Finally, defendant contends that VJK has fully mitigated its damages because Kemper was employed during the period of time which might have overlapped production of "Brenda Starr," had the film gone forward, and because Kemper was fully employed until February, 1982.

■ The measure of damages for breach of an employment contract is the wage payable during the remainder of the term less whatever income the employee earned during that period. *Cornell v. T.V. Development Corp.,* 17 N.Y.2d 69, 215 N.E.2d 349, 268 N.Y.S.2d 29 (1966). Plaintiff is seeking to recover damages for breach of contract for the twelve week period commencing January 12, 1981. Therefore, only that time period is relevant to plaintiff's damage claim. Kemper testified that, notwithstanding his efforts to secure alternate employment, he was unemployed during that twelve week period. He further testified that, sometime later in 1981, he commenced working on the motion picture "Partners," and that shortly thereafter he was employed to shoot the motion picture "Author, Author."

■ Defendant contends that it is entitled to a setoff for income earned by Kemper during the period of time that it otherwise would have taken to complete the principal photography on "Brenda Starr." The Court does not agree. Since plaintiff is not suing for the sums Kemper would have earned during the time that it would have taken to complete the film, what he earned during that period is irrelevant. Defendant is not entitled to benefit from the fact that plaintiff did not remain idle for an indefinite period of time awaiting the film's production after defendant materially breached the contract by failing to make payments commencing on January 12, 1981.

It follows that plaintiff is entitled to judgment in the amount of $78,000, plus pre-judgment interest from January 12, 1981.

It is SO ORDERED.