**TRANS–ORIENT MARINE CORP., Plaintiff,**

**v.**

**STAR TRADING & MARINE, INC. and The Republic of the Sudan, Defendants.**

**No. 86 Civ. 5823 (WCC).**

United States District Court, S.D. New York.

May 21, 1990.

As Amended Nunc Pro Tunc June 6 and June 19, 1990.

Walker & Corsa, New York City (LeRoy S. Corsa, Kirk M.H. Lyons and Nicholas Kalfa, of counsel), for plaintiff.

Odin, Feldman & Pittleman, P.C., Fairfax, Va. (Dexter S. Odin, Sally Ann Hostetler and Edward W. Cameron, of counsel), and Kleinberg, Kaplan, Wolff & Cohen, New York City (Norris D. Wolff, of counsel), for defendant The Republic of the Sudan.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

Defendant Republic of the Sudan moves this Court to dismiss the complaint for failure to state a claim or for summary judgment. It asserts that (1) plaintiff's claim is barred by the Foreign Sovereign Immunities Act; (2) plaintiff's claim is barred by the Act of State doctrine; and (3) plaintiff's alleged five-year exclusive agency contract was extinguished by the execution of subsequent contracts with third parties.[1]

## FACTS

Plaintiff's cause of action against the Sudan arises from an alleged breach of a five-year exclusive agency contract to provide shipping agency services for United States governmental relief programs, specifically, the United States P.L. 480 program.[2] The October 14, 1983 agreement, effective from October 1, 1984 through September 30, 1989, provided for payment of two-thirds of the commissions to plaintiff. The alleged breach occurred on January 3, and January 4, 1985 when the Sudan advised Trans–Orient that, pursuant to an agreement between the Sudan and the United States, the Sudanese private company Cereals Investment and Development Co. Ltd. ("CIDCO") had been appointed to assume Trans–Orient's role in dealing with future shipments of wheat and wheat-flour cargoes under the P.L. 480 program. On January 10, 1985, Trans–Orient entered into a one-year sub-agency agreement with CIDCO concerning shipment of the identical wheat and wheat-flour cargoes under the program. Although Trans–Orient performed no services under this agreement, it accepted one-third of the commissions. Af-

ter the one-year CIDCO contract expired, Trans–Orient refused to renew and instead, brought this action against the Sudan for alleged breach of the five-year agency contract which provided for payment to Trans–Orient of two-thirds of the commissions payable to CIDCO.

## DISCUSSION

*The Standard for Summary Judgment*

On a motion for summary judgment the burden is on the moving party to demonstrate that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c); *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2nd Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment must be denied if the movant does not sustain this burden, even if the non-moving party has not offered any opposition. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 161, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142 (1970). The party opposing summary judgment may not rest on mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). The task of the trial court in deciding a motion for summary judgment is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, resolving ambiguities and drawing reasonable inferences against the moving party. *Knight,* 804 F.2d at 11. The inquiry under a motion for summary judgment is thus the same as that under a motion for a directed verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,*

1. In a prior opinion dated March 1, 1990, 731 F.Supp. 619, this Court denied defendant's motion to dismiss on the ground that the present Sudanese government is not a successor state relieved of the prior sovereign's obligations. Both parties having been given the opportunity to submit papers on the present motion, the Court now addresses the alternative grounds raised therein.

2. P.L. 480 was originally enacted by the 83rd Congress as the Agricultural Trade Development and Assistance Act of 1954. 7 U.S.C. § 1761 *et seq.* Title I, Concessional Sales, permits developing nations to purchase United States agricultural products with low interest rates and long repayment periods. Administered by the United States Department of Agriculture, the program often involves the use of transportation agents representing the recipient country.

477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). Although summary judgment is ordinarily inappropriate where an individual's intent is implicated, the Court believes it proper in this case.

*Subject Matter Jurisdiction*

■ The Sudan argues for the second time that this Court lacks subject matter jurisdiction. By opinion and order dated July 29, 1987, this Court found jurisdiction because plaintiff's claim fell within the commercial activities exception of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1603, 1605(a)(2). *Trans–Orient v. Star Trading & Marine, Inc.,* Slip Op. at 9, 1987 WL 15129 (S.D.N.Y. July 29, 1987). The Court disagrees with defendant's unsupported assertion that plaintiff's "case as now amended is much different than it was when it was first filed," and reiterates its ruling that the Sudan's act of hiring plaintiff as an agent in the United States for the implementation of the P.L. 480 program constitutes a "commercial activity." Because defendant's alleged breach arises from that commercial activity, this Court has jurisdiction over the Republic of the Sudan in this action.

*Novation*

■ The Sudan next asserts that Trans–Orient's January 10, 1985 agreements with CIDCO and Star Trading constituted a novation, discharging the Sudan of its obligations under the five-year exclusive agency contract with Trans–Orient. A novation is simply the substitution of a new obligation for an old one, with the intent of extinguishing the old one, often involving the substitution of a third party for one of the original parties to the contract. The elements of a novation are:

   (1) a previously valid obligation;

   (2) an agreement of all parties to:

      (a) extinguishment of the old contract; and

      (b) a new contract; and

   (3) consideration for the new contract. *See Yahaya v. Cheun–Hsiung Hua,* 1989 WL 214481, 1989 U.S.Dist. LEXIS 14115 (S.D.N.Y. Nov. 28, 1989); *VJK Productions, Inc. v. Friedman/Meyer Productions, Inc.,* 565 F.Supp. 916, 921 (S.D.N.Y. 1983). For purposes of this motion, defendant admits that its five-year shipping agency contract with Trans–Orient represents a "previously valid obligation." The parties dispute the remaining elements.

■ In deciding whether a subsequent contract discharges a party's obligations under a previous contract, the parties' intentions are determinative. *See United Nations Korean R.A. v. Glass Production Methods, Inc.,* 291 F.2d 168, 172 (2nd Cir. 1961). As Corbin stated, "[n]o one will be held to have surrendered or modified any of his contract rights unless he is shown to have assented thereto in a manner that satisfies the requirements of a valid contract." 6 Corbin on Contracts, § 1293, p. 188. Consent to a novation need not be express but may be implied from all the facts and circumstances. *VJK Productions, Inc. v. Friedman/Meyer Productions, Inc.,* 565 F.Supp. 916, 921 (S.D.N.Y. 1983).[3]

■ As proof of Trans–Orient's consent, defendant points to the inconsistencies between the original and the subsequent contracts regarding the shipment of wheat and wheat-flour cargoes. While this Court notes that the agreements simultaneously obligate Trans–Orient as agent and as sub-agent for the same commodities shipments under the P.L. 480 program for the same year, and that the later contract covered a period of only one year, not five, and called for the payment to Trans–Orient of one-third, not two-thirds, of the commissions earned, plaintiff's actions are arguably as consistent with mitigation of the damages caused by the Sudan's breach as with a voluntary novation. Faced with

---

**3.** Because Trans–Orient admits that it remained the Sudan's shipping agent for all the commodities transported to the Sudan under AID, as CIP, GSM and U.S. P.L. 480 non-wheat and non-wheat-flour cargoes until September 30, 1989 when the contract expired by its own terms and because a new contract "operates as a discharge by substitution only so far as the inconsistency extends," Corbin on Contracts § 1296, the question here is whether the subsequent agreements novated the original contract provision concerning wheat and wheat-flour shipments.

what it believed to be defendant's breach of its five-year agency contract, Trans–Orient may have accepted the lesser one-year sub-agency agreement not as a satisfactory substitute, but merely to ensure some earnings. Moreover, Trans–Orient's May 20, 1985 letter to the Sudan asserting its intent to continue all obligations under the original contract belies its consent to a novation. Therefore, the inconsistencies are insufficient to indicate Trans–Orient's "clear and definite intention" to novate. Moreover, a novation must never be presumed. *See Beck v. Manufacturers Hanover Trust Co.*, 125 Misc.2d 771, 481 N.Y.S.2d 211, 218 (Sup.1984).

■ For the same reason, and because the subsequent agreement was not between the original parties to the contract, the Sudan is unable to prove an accord and satisfaction. *See Stahl Management Corp. v. Conceptions Unlimited*, 554 F.Supp. 890, 892 (S.D.N.Y.1983); Restatement (Second), Contracts, § 280, Comment a.

■ However, this case presents the more complicated issue of whether CID-CO's contract with Trans–Orient released the obligations of the Sudan, which thus became a third party beneficiary of that contract. At the earlier trial seeking enforcement of the CIDCO/Star–Trading agreements, this Court ruled that CIDCO and Star contracted with Trans–Orient because they "were apparently concerned that Trans–Orient would attempt to enforce that contract [and] to establish that it had been breached in favor of CIDCO and Star as a consequence of improprieties involving the Sudanese embassy in Washington and CIDCO and/or Star." Trans–Orient's statement of material facts as to which there is a genuine issue to be tried admits that Trans–Orient did not handle any wheat or wheat-flour shipments under the P.L. 480 program for the Sudan from 1985 through 1989 and Mr. Alisan Dobra, president of Trans–Orient, testified at that

trial that the share of the commissions he was given was "silence money." Transcript at 145. This Court found that it was "apparently understood that Trans–Orient would perform no services in connection with the shipments, and that Trans–Orient was receiving one-third of the commissions paid, in consideration for its acceptance of the appointment of Star as CIDCO's agent, without protest or complaint." Transcript at 208–209.

The Court now finds that Trans–Orient's acceptance of the appointment of CIDCO as the Sudan's agent was part and parcel of that consideration because mere acceptance of Star's appointment served little purpose if Trans–Orient could assert a claim against the Sudan. Forbearance to assert a valid claim, if bargained for, is alone sufficient consideration to support a contract. *See Williamsville Cent. School Dist. v. New York State Urban Development Corp.*, 142 A.D.2d 981, 530 N.Y.S.2d 402 (1988); Restatement (Second), Contracts, § 71, Comment c. In exchange for the CIDCO contract, Trans–Orient silenced its grievances against the Sudan.[4] For one year, Trans–Orient accepted payments constituting one-third of the commissions pursuant to that contract and this Court previously found that Trans–Orient had received all monies due it under that contract. Transcript at 209. Because it provided no services for those commissions other than its forbearance to assert a claim against the Sudan, Trans–Orient may not now assert the Sudan's breach of the former contract. Faced with a Hobson's choice of a claim against the Sudan for alleged breach of their five-year contract or a one-year contract in which Trans–Orient was granted one-third of the commissions for doing absolutely nothing but consenting to the new arrangement, Trans–Orient chose the latter and, as the Court previously ruled, voluntarily declined the offer to renew that one-year contract. Accordingly, defendant's motion for summary judgment is

---

**4.** Trans–Orient's May 20, 1985 letter to the Sudan asserting its intent to continue all obligations under the original contract is inconsist-

ent with the consideration given for the later contract and does not act to counter the release given.

granted.[5]

SO ORDERED.

**5.** The Court need not address defendant's claim that the action be dismissed under the Act of State doctrine.