**BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, Plaintiff,**

v.

**ENVASES VENEZOLANOS, S.A., Distribudora Envensa, S.A., Envases Metalicos, S.A., Envases Metalicos De Oriente, C.A., Dixie Cup De Venezuela, C.A., Vasos Venezolanos, C.A., Envases Argua, S.A., Representaciones Envensa S.A., Vidrios Domesticos, S.A., Envases Venezolanos Del Zulia, C.A., Defendants.**

**No. 89 Civ. 6186 (PKL).**

United States District Court, S.D. New York.

June 23, 1990.

---

Zeichner Ellman & Krause, New York City (Michael T. Sullivan, of counsel), for plaintiff.

Whitman & Ransom, Greenwich, Conn. (Mark R. Carta, Scott R. Lucas, of counsel), for defendants.

## OPINION AND ORDER

LEISURE, District Judge.

This is a diversity breach of contract action, with jurisdiction alternatively based on 12 U.S.C. § 632. Plaintiff Bank of America National Trust and Savings Association ("Bank of America") is suing to recover over $3 million plus interest and costs allegedly due and owing from defendants under a loan restructuring agreement dated September 15, 1988 (the "Restructuring Agreement"). Plaintiff contends that defendants have defaulted on their repayment obligation, and is demanding immediate repayment of the total amount due under the Restructuring Agreement, plus interest. Plaintiff has now moved for summary judgment on the Restructuring Agreement. Defendants oppose plaintiffs' motion on a number of grounds, asserting that they have stated legally sufficient defenses about which there are genuine issues of material fact in dispute, and arguing that, counter to the assertion of plaintiff, New York law does not control the ultimate determination of this action. For the reasons stated below, plaintiff's motion is granted in its entirety.

## BACKGROUND

Between 1978 and 1983, plaintiff Bank of America made a series of loans to defendant Envases Venezolanos, S.A. ("Envases"). By 1988, Envases owed $3,238,937.70 on those loans. On or about September 15, 1988, Envases and Bank of America entered into the Restructuring Agreement, which called for Envases to pay its remaining debt, plus interest, in 25 quarterly payments, beginning November 28, 1988, and ending in November 1994.[1] The Restructuring Agreement allowed Envases to take advantage of a favorable foreign exchange arrangement, available through the Banco Central de Venezuela ("Central Bank"). That exchange arrangement in essence provided for Central Bank subsidization of Venezuelan companies with foreign currency obligations. Each company desiring to take advantage of the favorable exchange rates was required to enter into a private agreement with the Central Bank. Under the agreement between the Central Bank and Envases, entered into on May 26, 1987, Envases was to deliver Venezuelan Bolivares to the Central Bank, and the Central Bank, using a preferential exchange rate, would then forward dollars to the foreign lender.

Envases' first payment to Bank of America under the Restructuring Agreement, on November 28, 1988, utilized this favorable exchange system through the Central Bank. Shortly after this payment, the Central Bank ceased to honor the exchange agreement with Envases, and thus refused to grant any favorable exchange rate for the repayments under the Restructuring Agreement. This refusal by the Central Bank to honor the exchange arrangement was formalized by the President of Venezuela in a decree issued on June 15, 1989. *See* Defendants' Exh. G. Because the Central Bank has refused to provide favorable exchange rates since December 1988, Envases has failed to make any of the subsequent repayments under the Restructuring Agreement. Envases claims that it would cost five times the number of Bolivares to

---

**1.** The remaining defendants, who are subsidiaries and affiliates of Envases, acted as guarantors of the agreement.

meet its obligations under the Restructuring Agreement, if it is forced to buy dollars on the open market, than it would have cost under the Central Bank exchange arrangement. Envases does not deny that it is able to purchase dollars through normal exchange channels, though at a substantially higher cost.

On September 7, 1989, after sending a demand letter, Bank of America noticed Envases' default under the Restructuring Agreement and demanded payment in full, plus interest and costs, on the entire amount covered by the agreement. *See* Affidavit of Steven D. Munter, sworn to on January 4, 1990, Exh. F. When defendants failed to respond to that notice of default with payment, plaintiff instituted the instant action. Plaintiff alleges that payment in full is required under the explicit terms of the Restructuring Agreement. Defendants do not deny their default, but challenge the enforcement of the Restructuring Agreement, asserting the contract defenses of frustration of purpose, impossibility, and unconscionability. Specifically, defendants claim that the sole purpose of the Restructuring Agreement was to allow Envases to take advantage of the favorable exchange rates available through the Central Bank. When those rates were no longer available, the purpose of the Restructuring Agreement was frustrated. Further, given the substantial cost of obtaining dollars through regular exchange channels, it is impossible for defendants to perform under the Restructuring Agreement. Finally, defendants allege that terms in the Restructuring Agreement that provide for a continuing obligation on the part of Envases, regardless of the fate of the Central Bank exchange arrangement, are unconscionable as they were the result of unfair bargaining power on the part of Bank of America. Plaintiff contends that none of these defenses are effective against the Restructuring Agreement.

## DISCUSSION

### A) Standard for Summary Judgment

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." " 'Summary judgment is appropriate when, after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party.' " *Horn & Hardart Co. v. Pillsbury Co.*, 888 F.2d 8, 10 (2d Cir.1989), *quoting Murray v. National Broadcasting Co.*, 844 F.2d 988, 992 (2d Cir.), *cert. denied*, 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988).

The substantive law governing the case will identify those facts which are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will probably preclude the entry of summary judgment.... While the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are crucial and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there. does indeed exist a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2511; *see also R.C. Bigelow, Inc. v. Unilever N.V.*, 867 F.2d 102, 107 (2d Cir.), *cert. denied sub nom. Thomas J. Lipton, Inc. v. R.C. Bigelow, Inc.*, —— U.S. ——, 110 S.Ct. 64, 107 L.Ed.2d 31 (1989). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying which materials it believes "demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Trebor Sportswear Co. v. Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir.1989). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an

absence of evidence to support the nonmoving party's case." *Celotex, supra,* 477 U.S. at 325, 106 S.Ct. at 2553.

Indeed, once a motion for summary judgment is properly made, the burden then shifts to the nonmoving party, which "must set forth facts showing that there is a genuine issue for trial." *Anderson, supra,* 477 U.S. at 250, 106 S.Ct. at 2511. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted).

*B) Choice of Law*

As a threshold matter, the Court is faced with a dispute regarding the applicable law in this action. It is undisputed that the Restructuring Agreement contains choice of forum and choice of law provisions. Restructuring Agreement, Defendants' Exhibit A, §§ 11.04, 11.05. Defendants assert, however, that the Court should not give effect to those provisions, and that, additionally, this action is controlled by 12 U.S.C. § 632, and not by state common law.

In 1984, New York State amended its General Obligations Law to indicate a strong policy in favor of choice of law and choice of forum provisions. *See* N.Y. Gen. Oblig.Law §§ 5–1401, 5–1402. Section 5–1401 states:

> The parties to any contract, agreement or undertaking, contingent or otherwise, in consideration of, or relating to any obligation arising out of a transaction covering in the aggregate not less than two hundred fifty thousand dollars ... may agree that the law of this state shall govern their rights and duties in whole or in part, whether or not such contract, agreement or undertaking bears a reasonable relation to this state....

Prior to the passage of § 5–1401, New York courts "held that while the parties' choice of law is to be given considerable weight, the law of the jurisdiction with the 'most significant contacts' is to be applied." *S. Leo Harmonay, Inc. v. Binks Manufac-*

*turing Co.,* 597 F.Supp. 1014, 1025 (S.D.N.Y.1984), *citing Haag v. Barnes,* 9 N.Y.2d 554, 559–60, 216 N.Y.S.2d 65, 68, 175 N.E.2d 441, 443 (1961). The passage of § 5–1401 explicitly eliminated the "contacts" analysis of choice of law provisions in New York. "[T]he enactment of the statute now puts beyond argument the policy question of whether New York courts should burden themselves with litigation involving non-residents where the only nexus is the contractual agreement to designate New York as a forum. We have declared in no uncertain terms that we are prepared to accept jurisdiction of such disputes.... Earlier cases, which expressed reluctance to jurisdiction based on agreement are no longer a guide." *Credit Francais International, S.A. v. Sociedad Financiera de Comercio, C.A.,* 128 Misc.2d 564, 569, 490 N.Y.S.2d 670, 675–76 (Sup.Ct.N.Y.Co.1985).

Defendants, in arguing that § 5–1401 does not control in the instant case, point to *Bank Itec N.V. v. J. Henry Schroder Bank & Trust Co.,* 612 F.Supp. 134 (S.D.N.Y. 1985). In that case, the Court did not apply § 5–1401 in reviewing the applicability of a choice of law provision, and instead relied on the "contacts" analysis used before the passage of § 5–1401. Defendants argue that this Court should follow the *Bank Itec* Court's lead and apply the "contacts" analysis rather than § 5–1401.

Defendants' reliance on *Bank Itec* is misplaced. It is true that the Court decided not to apply § 5–1401. However, the Court came to that decision because the statute was inapplicable to that case, not because the Court chose which analytical framework to use. The contract at issue in *Bank Itec* was entered into, and the action relating to it was commenced, prior to the passage of § 5–1401, and thus the choice of law provision in that contract could not be protected by the statute. Indeed, in the course of its analysis of the pre-1984 choice of law provision, the Court noted the existence and importance of § 5–1401. "The New York State legislature recently enacted a provision giving a choice of law clause designating the law of New York

binding effect regardless of whether the agreement bears a reasonable relation to New York." *Bank Itec*, 612 F.Supp. at 141 n. 7.

A court sitting in a diversity case must apply the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). It is clear that where a contract is for more than $250,000, was entered into after 1984, and contains a choice of law provision designating New York law as controlling on disputes arising out of that contract, N.Y. Gen Oblig. Law § 5–1401 mandates the enforcement of that choice of law provision. There is no indication in the statute, or in the very limited judicial interpretation of it, of any exception which would apply to the case at bar.

Defendants further argue that even if § 5–1401 requires enforcement of the choice of law provision under New York law, the Court is bound to look to federal choice of law rules since this case is covered by 12 U.S.C. § 632. Section 632 is a jurisdictional provision that grants federal district courts original jurisdiction in actions involving disputes over international banking where one of the parties is a corporation organized under the laws of the United States. Actions whose federal court jurisdiction are based on § 632 are deemed to have arisen under the laws of the United States. Defendants argue that this provision of § 632 requires the Court to apply federal common law choice of law rules, rather than the New York choice of law rules.

The Court disagrees with defendants' analysis of the law. It is true that where § 632 is the sole basis for federal jurisdiction and there is no indication from the parties as to a choice of law, the Second Circuit has applied federal common law choice of law rules. *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 795 (2d Cir.1980), *cert. denied*, 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981). However, where the action is based in diversity jurisdiction, the choice of law is governed by the rules of the forum state. *Citibank, N.A. v. Benkoczy*, 561 F.Supp. 184, 186 (S.D.Fla.1983). In the instant case, jurisdiction is based both on diversity and on § 632. Further, in none of the cases cited by plaintiff where federal common law choice of law rules were applied had the parties indicated a choice of law in the contract or agreement in dispute.[2] Both of these factors militate in favor of the imposition of New York choice of law rules and thus for the preservation of the choice of law provision in the Restructuring Agreement.[3] Accordingly, the Court finds that New York law applies to the instant action.[4]

## C) Frustration of Purpose

Defendants' first substantive defense to plaintiff's claims is that the revocation of the currency exchange agreement by the Central Bank frustrated the purpose of the Restructuring Agreement. The doctrine of frustration of purpose arises from the Casebook standard, *Krell v. Henry*, 2 K.B. 740 (1903), where the Court excused a prospective tenant from his obligation to pay for a room overlooking the King's coro-

**2.** Indeed, the Court believes that, in general, great weight should be given to forum and law selection clauses, even in the absence of § 5–1401. As Judge Friendly wrote in upholding a forum/choice of law provision, "There can be nothing 'unreasonable and unjust' in enforcing such an agreement; what would be unreasonable and unjust would be to allow [defendants] to disregard it." *AVC Nederland B.V. v. Atrium Investment Partnership*, 740 F.2d 148, 156 (2d Cir.1984).

**3.** The Court agrees with plaintiff that even if the Court were to apply federal common law choice of law rules, defendants have presented no evi-

dence as to what other forum's law, if any, would be appropriate or what impact, if any, that undisclosed forum's law would have on plaintiff's instant summary judgment motion that would be different from the application of New York law. Absent evidence, or even argument, on these issues, defendants have raised no genuine issue of material fact regarding the choice of law in this action.

**4.** To the extent that defendants challenge the choice of forum clause in the Restructuring Agreement, it too will be upheld.

nation route, when the King became ill, and the coronation parade was cancelled.

"In modern legal parlance, frustration of purpose refers to a situation where an unforeseen event has occurred, which, in the context of the entire transaction, destroys the underlying reasons for performing the contract, even though performance is possible, thus operating to discharge a party's duty of performance." *Matter of Fontana D'Oro Foods, Inc.*, 122 Misc.2d 1091, 1096, 472 N.Y.S.2d 528, 532 (Sup.Ct.1983), *aff'd as modified*, 107 A.D.2d 808, 484 N.Y.S.2d 644 (2d Dep't), *aff'd*, 65 N.Y.2d 886, 493 N.Y.S.2d 300, 482 N.E.2d 1216 (1985). There are strict limits on the reach of the frustration defense. "[T]he applicable rules do not permit a party to abrogate a contract, unilaterally, merely upon a showing that it would be financially disadvantageous to perform it; were the rules otherwise, they would place in jeopardy all commercial contracts." *407 E. 61st Garage, Inc. v. Savoy Fifth Avenue Corp.*, 23 N.Y.2d 275, 281, 282, 296 N.Y.S.2d 338, 344, 244 N.E.2d 37, 42 (1968). *See also Rivas Paniagua, Inc. v. World Airways, Inc.*, 673 F.Supp. 708, 714–15 (S.D.N.Y. 1987).

Defendants argue that the sole purpose of the Restructuring Agreement was to allow Envases to take advantage of the favorable currency exchange arrangements through the Central Bank. When those arrangements were no longer available, the purpose of the Restructuring Agreement was frustrated. The Restructuring Agreement in its preamble states, "The Company [Envases] has requested the Bank [plaintiff] to restructure the Existing Indebtedness so as to enable the Company to benefit from such preferential exchange rate treatment, and the Bank is willing to restructure the Existing Indebtedness on the terms and conditions of this Agreement." Defendants argue that this reference to the preferential exchange arrangements, and other such references in the body of the Restructuring Agreement, make it clear that the opportunity to take advantage of the exchange arrangements was the principle purpose of the Restructuring Agreement.

Taking this contention as true, the Court finds defendants' assertion of frustration of purpose is without merit. "[T]he frustration of purpose defense is not available where, as here, the event which allegedly frustrated the purpose of the contract ... was clearly foreseeable." *VJK Productions, Inc. v. Friedman/Meyer Productions, Inc.*, 565 F.Supp. 916, 921 (S.D.N.Y. 1983). In the instant case, it is profoundly clear that the possibility of a change in the currency regulations was considered in the drafting of the Restructuring Agreement. Section 3.05 of the Restructuring Agreement states, "[T]he obligations of the Company under this Agreement shall not be satisfied, released, discharged, or otherwise affected by any action taken by Venezuela or the Central Bank with respect to, or any change in laws or regulations (including foreign exchange regulation) applicable to, the Notes." If that provision were not clear enough, § 5.02 makes it explicit that an adjustment in or cancellation of the exchange arrangements will not abrogate defendants' repayment obligations.[5] Thus, the Court finds that the Restructuring

---

**5.** Section 5.02 states: "The Company's obligation to pay the principal of and interest on the Restructured Obligations at the times and at the location and in the manner specified in this Agreement is absolute and unconditional and shall not in any way be satisfied, released, discharged or affected by the Exchange Agreements (or any cancellation or modification thereof) or the Company's participation in the RECADI process (or by any action taken by the Company or the Bank to enforce the provisions of, or to exercise any other right, power or privilege under, the Exchange Arrangements) or any change in law or regulation or any other circumstance whatsoever, unless and until, and except to the extent, the Bank actually receives payments in proper funds at Lending Office as specified in Section 5.01 at the times and in the amounts and in the manner required hereunder, and the Exchange Arrangements shall not operate as a novation of the obligations of the Company hereunder. In particular, without limiting the generality of the foregoing, such obligations of the Company shall not be satisfied, released, discharged or otherwise affected by the payment of any amount in Bolivares by the Company to the Central Bank or any other Venezuelan governmental entity or any failure on the part of the Central Bank to meet its obligations under the Exchange Arrangements."

Agreement took into account the possibility of a change in the exchange arrangements. Thus, the cancellation of those arrangements cannot be said to be unforeseeable, and defendants' assertion of frustration of purpose must fail.

### D) Impossibility

■ Defendants maintain that even if the purpose of the Restructuring Agreement was not frustrated, the cancellation of the preferable exchange arrangements has made defendants' performance impossible, thus excusing their default. In particular, defendants assert that meeting their obligations under the Restructuring Agreement will now cost them five times the amount in Bolivares as it would have cost with the exchange arrangements in place. This, defendants allege, will create substantial financial hardship, and may in fact lead to bankruptcy.

"In general, impossibility may be equated with an inability to perform as promised due to intervening events, such as an act of state or destruction of the subject matter of the contract. The doctrine comes into play where (1) the contract does not expressly allocate the risk of the event's occurrence to either party, and (2) to discharge the contractual duties ... of the party rendered incapable of performing would comport with the customary risk allocation." *United States v. Gen. Douglas MacArthur Senior Village, Inc.,* 508 F.2d 377, 381 (2d Cir.1974). "The defense is not available where ... the event which renders the performance impossible could have been anticipated and provided for in the contract." *VJK Productions, supra,* 565 F.Supp. at 920 (citations omitted).

In the instant case, defendants' assertion of the impossibility defense fails on two grounds. First, defendants do not assert that they absolutely cannot perform under the contract. They maintain only that performance will be extremely expensive, much more expensive than they had anticipated at the time the Restructuring Agreement was signed. However, financial difficulty does not, in and of itself, make out an impossibility defense. "[W]here impossibil-

ity or difficulty of performance is occasioned only by financial difficulty or economic hardship, even to the extent of insolvency or bankruptcy, performance of a contract is not excused." *407 E. 61st Garage, supra,* 23 N.Y.2d at 281, 296 N.Y.S.2d at 344, 244 N.E.2d at 41 (citations omitted).

Second, as discussed above in connection with defendants' assertion of frustration defense, §§ 3.05 and 5.02 of the Restructuring Agreement clearly anticipated the possibility of a change in the exchange arrangements and specifically allocated the risk of such changes to defendants. Where the risk which causes the alleged impossibility of performance is foreseen, accounted for, and allocated in the contract, failure to perform cannot be excused. Accordingly, the defense of impossibility of performance must fail.

### E) Unconscionability

■ Defendants argue that the terms of the Restructuring Agreement which make them liable for repayment even in the face of changes in the exchange arrangements, are unconscionable. "An unconscionable contract 'affronts the sense of decency,' and usually involves gross onesidedness, lack of meaningful choice and susceptible clientele." *Croce v. Kurnit,* 565 F.Supp. 884, 892 (S.D.N.Y.1982) (*quoting Gimbel Bros., Inc. v. Swift,* 62 Misc.2d 156, 307 N.Y.S.2d 952 (Civ.Ct.1970)), *aff'd,* 737 F.2d 229 (2d Cir.1984). However, "mere inequality in bargaining power does not render a contract unenforceable." *Finkle and Ross v. A.G. Becker Paribas, Inc.,* 622 F.Supp. 1505, 1511 (S.D.N.Y.1985). In the end, "[t]he purpose of the doctrine of unconscionability is to prevent oppression and unfair surprise." *Leasing Service Corp. v. Broetje,* 545 F.Supp. 362, 366 (S.D.N.Y. 1982).

Defendants note that they were overdue on indebtedness to plaintiff and other banks at the time of the Restructuring Agreement, that they were unable to meet those obligations at that time, and that they were threatened with default. Thus, defendants maintain that they were at the mercy of plaintiff and other banks and

were forced to accept these unduly onerous terms.

■ The Court must look to the contract as a whole, and the atmosphere in which it was entered into in order to determine unconscionability. *Leasing Service Corp. v. Graham,* 646 F.Supp. 1410, 1418 (S.D.N.Y. 1986). In the instant case, the Restructuring Agreement, when viewed as a whole and in light of the surrounding circumstances, cannot be considered unconscionable. Even if the Court were to hold that the terms requiring repayment despite cancellation of the exchange arrangements were burdensome, the Court could not invalidate the repayment obligation. At the time the Restructuring Agreement was drafted, defendants, by their own admission, were overdue on payments under previous loans from plaintiff. Plaintiff had the option to place defendants in default on those earlier loans. Instead, plaintiff subrogated its rights under the prior loan agreements and entered into the Restructuring Agreement to allow Envases to take advantage of an opportunity to make repayment at a reduced cost. Plaintiff, however, apparently insisted that repayment be made, as would have been required under the previous loan agreements, even if the favorable exchange opportunity should cease to exist. While there is no doubt that plaintiff had some leverage in any negotiations regarding the Restructuring Agreement, the Court cannot find that a lender's insistence on protecting its right to repayment on overdue loans in a Restructuring Agreement is unconscionable. Thus, defendants' assertion of unconscionability must fail.

### F) Alternate Claims for Relief

■ In addition to breach of contract claims, plaintiff has alleged common law causes of action for money lent and for money had and received. Defendants attack these claims on a number of grounds.[6] Defendants assert that these claims lie in quasi-contract and thus are inappropriate for disposition on summary judgment. Defendants further contend that attorneys' fees and costs are not available under these causes of action. Finally, defendants assert that these claims cannot be maintained where there is a writing covering the subject matter of the claims.

Defendants are correct that courts are less willing to grant summary judgment on equitable or quasi-contractual claims for relief. However, as with any claim, in order to avoid summary judgment, the non-moving party must put forward some evidence indicating that there is a genuine issue of material fact on those claims. As discussed above in relation to plaintiff's breach of contract claims, defendants have not put forward any evidence sufficient to avoid summary judgment on the facts at issue.

Defendants have provided no cases on point that indicate that claims for money lent and for money had and received cannot be sustained along side claims for breach of contract. It appears correct that a claim for money lent may not be maintained in the place of a breach of contract claim where there is a written contract. That doctrine is not applicable here. In the instant case, the actual loan to Envases is not covered by the Restructuring Agreement. The Restructuring Agreement, on its terms, only covers repayment of money previously lent. The original loan agreements have either expired or were expressly subsumed by the Restructuring Agreements. Thus, the loans are no longer covered by contracts on which plaintiff could sue. Thus, these actions are sustainable, and defendant has presented insufficient evidence to counter plaintiff's motion for summary judgment.

Finally, the Court need not reach defendants' argument that attorneys' fees, interest and costs are unavailable under the instant quasi-contractual claims. The Court has already found that plaintiff has prevailed on its breach of contract claims.

---

**6.** Defendants assert correctly that claims for money lent and for money had and received can only be brought against the recipient of the money and not against guarantors. However, plaintiff pled these claims only against Envases, who was the recipient of the funds. Complaint ¶¶ 26, 28. Thus, those claims were properly pled.

Since the interest demanded in the complaint is included as a term in the Restructuring Agreement, the award of interest follows the terms of the contract. Payment of attorneys' fees and costs incurred in the course of pursuing collection are also provided for in the Restructuring Agreement. Restructuring Agreement, Defendants' Exh. A, § 11.14. Thus, these fees and costs will be provided for under plaintiff's breach of contract claims, regardless of their availability under the quasi-contract claims.

*G) Discovery*

Defendants claim that plaintiff has failed to answer legitimate discovery requests in a timely and complete fashion, thus making it difficult, if not impossible for defendants to adequately respond to plaintiff's summary judgment motion. If defendants believed at the time when plaintiff's motion was filed that they would be unable to respond adequately to that motion absent additional discovery, Fed.R.Civ.P. 56(f) provides nonmoving parties with a mechanism to stay the motion pending the necessary discovery. *See Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*, 891 F.2d 414, 422 (2d Cir.1989). Defendants have not filed a Rule 56(f) motion in conjunction with the instant summary judgment motion. Nor have defendants filed a motion to compel discovery or for discovery sanctions pursuant to Fed.R.Civ.P. 37. Finally, defendants have made no substantial showing that any of the materials allegedly improperly withheld would have provided a genuine basis for challenging the instant motion.

█ In light of the availability of relief under Rule 56(f), as well as Rule 37, defendants' objections at this time to plaintiff's responses to their discovery requests are not well taken. Simple allegations of improper discovery tactics are not sufficient to defeat a summary judgment motion, particularly where the party making those allegations has failed to take advantage of the appropriate avenues of relief available under the Federal Rules of Civil Procedure.

## CONCLUSION

Plaintiff's motion for summary judgment is granted. Plaintiff shall prepare a proposed judgment and submit it to the Court, through the Judgment Clerk's office, within ten (10) days of this order.

SO ORDERED.