**TRANS–ORIENT MARINE CORPORA-
TION, Plaintiff–Appellant,**

v.

**STAR TRADING & MARINE, INC., and
The Republic of the Sudan,
Defendants–Appellees.**

No. 457, Docket 90–7567.

United States Court of Appeals,
Second Circuit.

Argued Oct. 15, 1990.

Decided Feb. 6, 1991.

Nicholas Kalfa (LeRoy S. Corsa, Walker & Corsa, New York City, of counsel), for plaintiff-appellant.

Sally Ann Hostetler (Dexter S. Odin, Edward W. Cameron, Odin, Feldman & Pittleman, P.C., Fairfax, Va., of counsel), for defendants-appellees.

Norris D. Wolff (Kleinberg, Kaplan, Wolff & Cohen, P.C., New York City), for defendants-appellees.

Before OAKES, Chief Judge, PIERCE, and WINTER, Circuit Judges.

PIERCE, Senior Circuit Judge:

Plaintiff Trans–Orient Marine Corporation ("Trans–Orient") appeals from judgments entered in the United States District Court for the Southern District of New York (Conner, *Judge*) dismissing its action against defendant Star Trading & Marine, Inc. ("Star") at the conclusion of plaintiff's case and granting summary judgment in favor of defendant The Republic of the Sudan ("the Sudan"). On appeal, Trans–Orient argues that the district court 1) based its decision to dismiss the action against Star on clearly erroneous factual findings and 2) improperly granted summary judgment in favor of the Sudan.

For the reasons that follow, we reverse the dismissal of Trans–Orient's action against Star and remand for further proceedings against that defendant, and we affirm the lower court's grant of summary judgment in favor of the Sudan.

## BACKGROUND

Trans–Orient is a New York corporation that provided shipping agency services for the Sudan in connection with United States government relief programs. The program involved here, known as the P.L. 480 program, was enacted as Title I of the Agricultural Trade Development and Assistance Act of 1954, 7 U.S.C. §§ 1701–1715 (1988).

P.L. 480 permits developing nations to purchase surplus United States agricultural products and often involves the use of transportation agents representing the recipient country. According to Trans–Orient, it has been the Sudan's exclusive shipping agent since 1961, during which time Trans–Orient arranged the transportation of surplus wheat, wheat flour and other commodities under the P.L. 480 program. Since January 1985, however, Trans–Orient has not represented the Sudan on P.L. 480 wheat and wheat flour shipments because of an alleged breach by the Sudan of a five-year agency contract it entered into with Trans–Orient in 1983.

The 1983 contract is a single-page letter agreement dated October 14, 1983 and headed "Extension of Agency Contract." The agreement was signed by Alisan Dobra, President of Trans–Orient, and Mamoun O. Medani, Economic Counsellor for the Embassy of the Democratic Republic of the Sudan ("Sudanese Embassy"). In the letter, Medani states that "I am pleased to confirm that we have extended the validity of your Agency contract for another five years to start October 1, 1984."

On January 3 and 4, 1985, however, Medani informed Trans–Orient in two letters that the Sudan was not bound by the October 14, 1983 contract because a Sudanese private company, Cereals Investment and Development Co., Ltd. ("CIDCO"), had assumed the Sudan's role in handling P.L. 480 wheat and wheat flour shipments, and that CIDCO would appoint its own shipping agent. Alisan Dobra complained to Sudanese Embassy officials, asserting that under the October 1983 contract, Trans–Orient's agency extended to all P.L. 480 commodities purchased by the Sudan and that any unilateral termination required one year's written notice. Notwithstanding Dobra's protestations, the Sudan adhered to its position that it was no longer bound by the October 1983 agency contract.

On January 10, 1985, CIDCO proceeded to appoint Star as its shipping agent. On the same day, despite Trans–Orient's claim that it was entitled to continue as the exclusive shipping agent for all P.L. 480 com-

modities, Trans–Orient entered into a one-year sub-agency agreement with CIDCO covering the same P.L. 480 wheat and wheat flour shipments. These two agreements with CIDCO resulted in a reversal of the roles previously held by Trans–Orient and Star. Prior to 1985, Star had served as Trans–Orient's sub-agent and received one-third of the shipping agent's brokerage commissions; Trans–Orient, as agent, had received the other two-thirds. Under the new relationship created by the January 1985 agreements, Trans–Orient became the sub-agent and was entitled to receive only one-third of the commissions, to be paid over to Trans–Orient by Star.

Finally, also on January 10, 1985, Trans–Orient and Star entered into a contract. Their one-sentence agreement reads:

> As we are, this afternoon, signing each a separate agreement, with CEREAL[S] INVESTMENT & DEVELOPMENT CO., LTD. (CIDCO) of Sudan, Star Trading & Marine, Inc. as its agent, and Trans–Orient Marine Corp. as its sub-agent, both appointed today, we agree and guarantee to each other that we are in the future [sic] renew our contracts only together and in agreement with each other.

Shortly after the January 10, 1985 agreements were executed, Trans–Orient complained to the United States Department of Agriculture ("USDA") about what it believed were improprieties or illegalities being committed by CIDCO and Star. In addition, Trans–Orient filed suit in the United States District Court for the District of Columbia against Star alleging, *inter alia,* that Dobra had been coerced into signing the January 10, 1985 agreements. During 1985, despite its consistent adversarial posture towards Star and CIDCO, Trans–Orient received and cashed checks from Star representing one-third of the commissions on the P.L. 480 shipments to the Sudan. Trans–Orient performed no services in exchange for these commissions.

When the time came to renew Trans–Orient's contract in January 1986, CIDCO conditioned renewal on the withdrawal of Trans–Orient's complaints with the USDA.

Dobra refused this offer. Since no other offer was made in 1986, no renewal agreement was reached and Trans–Orient collected no commissions during 1986. The next year, in 1987, as the district court found, "Sudanese officials, apparently believing that the complaint filed with the USDA by Trans–Orient had gone beyond the point of recall, offered to continue Trans–Orient's appointment as [CIDCO's] subagent." This offer was subject to a new contract being signed between Trans–Orient and the Sudan and, as is discussed hereinbelow, also subject to mutually agreeable "details." Although Dobra agreed to this offer, he claims no agreement was consummated because the Sudanese government official failed to respond to Trans–Orient's proffered details. Star, however, did enter into new contracts with CIDCO in 1986 and each year subsequently but never sought Trans–Orient's agreement to these arrangements. Trans–Orient received no other offers to renew its January 1985 contract with CIDCO and, consequently, received no commissions on P.L. 480 wheat and wheat flour shipments for 1987, 1988, and 1989.

Trans–Orient brought this diversity action against Star and the Sudan on July 28, 1986. In its amended complaint, Trans–Orient alleged that Star "acted and continues to act as CIDCO's agent and [to] collect full brokerage commissions in breach of the January 10, 1985 [Star/Trans–Orient] agreement." Against the Sudan, Trans–Orient alleged a breach of the October 14, 1983 five-year agency agreement. The amended complaint sought damages of $600,000 against each defendant.

On the day of trial, the Sudan claimed that it could not be liable on the October 14, 1983 contract, since it was entered into by a prior Sudanese government. In order to allow the parties to brief this newly-raised issue, Judge Conner adjourned the action against the Sudan and allowed the claim against Star to proceed. A two-day bench trial was then held relating only to the claim against Star, at which Dobra was the only witness to testify. At the conclusion of plaintiff's case the court granted

Star's motion to dismiss under Rule 41(b) of the Federal Rules of Civil Procedure. In an oral ruling, the court found that "Trans–Orient was unwilling to participate in a renewal of [the] arrangements" in its contract with CIDCO, and therefore, "there was no breach of the January 10, 1985 agreement between Trans–Orient and Star when Star proceeded independently of Trans–Orient to make a contract with CID-CO." Moreover, the court held, any damages were caused by Trans–Orient itself "by declining the offer to renew [the Trans–Orient/CIDCO] agreement." Therefore, since Trans–Orient had proven neither breach nor proximate causation, the court dismissed the suit against Star.

Two weeks after Trans–Orient's action against Star was dismissed, the Sudan moved for summary judgment on several grounds. Judge Conner denied the motion on the first asserted ground, finding that the present Sudanese government could be held liable for the contractual obligations of the predecessor government. *Trans–Orient Marine Corp. v. Star Trading & Marine, Inc.*, 731 F.Supp. 619 (S.D.N.Y. 1990). After the parties then briefed the remaining issues, the district court issued another opinion. This time Judge Conner granted summary judgment for the Sudan. *Trans–Orient Marine Corp. v. Star Trading & Marine, Inc.*, 736 F.Supp. 1281 (S.D. N.Y.1990).

After considering and rejecting several defenses, the district court arrived at "the more complicated issue of whether CID-CO's contract with Trans–Orient released the obligations of the Sudan, which thus became a third party beneficiary of that contract." *Id.* at 1284. Judge Conner noted that, in the trial against Star, he had ruled that it was " 'apparently understood that Trans–Orient would perform no services in connection with the shipments, and that Trans–Orient was receiving one third of the commissions paid, in consideration for its acceptance of the appointment of Star as CIDCO's agent without protest or complaint.' " *Id.* (quoting oral ruling in trial against Star).

On the summary judgment ruling, Judge Conner went on to hold that "part and parcel" of Trans–Orient's acceptance of Star as CIDCO's agent was acceptance of CIDCO as the replacement for the Sudan, "because mere acceptance of Star's appointment served little purpose if Trans–Orient could assert a claim against the Sudan." *Id.* Thus, the district court found that Trans–Orient's promise of forbearance included both Star *and* the Sudan. The district court also found, albeit tacitly, that the Sudan was an intended third party beneficiary of Trans–Orient's promise of forbearance; this holding is necessarily implied in the district court's opinion since, after posing the question, the district court found a promise of forbearance that could be enforced as a defense by the Sudan. By granting summary judgment, therefore, the district court implicitly held that the Sudan was a third party beneficiary.

This appeal followed.

## DISCUSSION

### A. *Dismissal of Action Against Star*

■ Trans–Orient contends that the district court's decision to dismiss its action against Star rests on clearly erroneous factual findings. Giving due regard to the district judge's ability to assess the credibility of the sole witness in this case, Fed. R.Civ.P. 52(a), and noting that the judge made no express credibility determination, we agree that the district court's findings in this regard were clearly erroneous. Viewing the record before us in its entirety, we are "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *see McAllister Bros., Inc. v. United States*, 890 F.2d 582, 585 (2d Cir.1989).

Trans–Orient's breach of contract claim against Star is based on their simple one-sentence contract, which the district court correctly construed as "provid[ing] that Star would not enter into any further agreement with CIDCO ... without the participation of Trans–Orient." In granting Star's motion to dismiss at the conclu-

sion of plaintiff's case, however, the court found that Trans–Orient had failed to prove by a preponderance of the evidence that the contract was breached or that such a breach was the proximate cause of injury. The district court's dismissal hinges on the following factual findings:

The court finds that in January 1986 when the contracts of January 10, 1985 expired, Trans–Orient could have entered into a renewal of the contracts on the same terms, that is, that it would receive one third of the 2 and a half percent commissions paid on the PL 480 shipment to Sudan, on the sole condition that it not make any complaint about those arrangements, or about any suspected improprieties which led to Trans–Orient's replacement....

\*   \*   \*   \*   \*   \*

Thus the court finds that Trans–Orient was not willing to continue on the basis established by the January 10, 1985 agreements. Since Trans–Orient was unwilling to participate in a renewal of those arrangements, there was no breach of the January 10, 1985 agreement between Trans–Orient and Star when Star proceeded independently of Trans–Orient to make a contract with CIDCO or to receive an appointment as CIDCO's []agent for the years 1986 and subsequently. In any event, insofar as it suffered any injury from a breach of the January 10, 1985 agreement, Trans–Orient caused such injury by declining the offer to renew that agreement.

Contrary to the district court, we find no indication in the record evidence that Trans–Orient received and rejected an offer to renew its contract with CIDCO on the same terms as in the original January 10, 1985 contract.

Trans–Orient arguably had an opportunity to "renew" the January 10, 1985 Trans–Orient/CIDCO contract when CIDCO made an offer in January 1986. However, this offer was not made on the same terms as the 1985 agreement, but was made on the condition that Trans–Orient withdraw the complaints it had filed with the USDA. Renewal normally involves "a continuation of the relationship on essentially the same terms and conditions as the original contract." *Williams Petroleum Co. v. Midland Coops., Inc.*, 679 F.2d 815, 819 (10th Cir.1982). Although Trans–Orient concedes it refused the January 1986 offer, this refusal cannot properly bar its breach of contract claim against Star, since the offer by CIDCO was not made on the same terms as the original contract. *See East Bay Union of Machinists v. Fibreboard Paper Prods. Corp.*, 285 F.Supp. 282, 287 (N.D.Cal.1968), *aff'd mem.*, 435 F.2d 556 (9th Cir.1970) (offer including modified terms is not an offer to renew but an offer to enter a different or new contract).

One year later, in 1987, a Sudanese government official offered Trans–Orient an opportunity to renew its contract with CIDCO. While this offer did not require the withdrawal of the complaint filed with the USDA, Dobra testified at trial that it was made subject to a new contract to be signed between Trans–Orient and the Sudanese government and also subject to mutually agreeable "details." During his testimony Dobra repeatedly asserted that these "details" were never ironed out:

THE COURT: You turned that [offer] down as well?

THE WITNESS: It was very good question, your Honor. It was subject to a new agreement to be signed, the details to be signed, subject to new details, and I gave my details and they did not waive theirs, and they did not follow up with their offer....

\*   \*   \*   \*   \*   \*

Q.... I understand they offered you a contract.

A. Yes, they offered me a contract.

Q. And you refused it.

A. It was a seven-point contract, I recall. The first item was I had to withdraw my case after the settlement. There will be no other compensation for 1986, no compensation for '86, and then I did not have to retract what I have said because it was too far with the Justice Department investigation, they will not stop it, and then it was

subject to a new contract between me and the government of Sudan, ministry of finance, on subject: new details. And I gave the details, I have the telexes, I have the offers, and they did not come forward.

■ Thus, Dobra, the only witness to testify at trial, emphatically stated that the 1987 offer was not unconditional and the reason that a renewal agreement was not entered into was because of the Sudanese government's failure to respond to Trans–Orient's details. Nowhere in his testimony does Dobra concede that the 1987 offer was unconditional or that he refused it. Nonetheless, the district court found that Trans–Orient "could have entered into a renewal of the contract[ ] on the same terms" and was "unwilling to participate in a renewal of those arrangements." If a finding is directly contrary to the only testimony presented, it is properly considered to be clearly erroneous. *See Morris Plan Indus. Bank v. Finn*, 149 F.2d 591, 592 (2d Cir.1945); *In re Hammons*, 438 F.Supp. 1143, 1149 (S.D.Miss.1977), *rev'd on other grounds*, 614 F.2d 399 (5th Cir.1980); *see also Lame v. United States Dep't of Justice*, 767 F.2d 66, 70 (3d Cir.1985) (factual findings clearly erroneous if unsupported by substantial evidence, lack adequate evidentiary support, or against clear weight of evidence).

Accordingly, since we find no indication in the record that either of the offers made in 1986 or 1987 was unconditional, or, in the case of the 1987 offer, that Trans–Orient rejected it, we set aside the district court's findings that Trans–Orient rejected an offer to renew its contract with CIDCO "on the same terms" and was unwilling to participate in a renewal of those arrangements. There is simply no affirmative evidence at this point in the trial to sustain these findings. We therefore reverse the district court's determination, based on these findings, that there was no breach by Star of the January 1985 Star/Trans–Orient contract. In addition, because it was based on the same erroneous factual findings, we must also reverse the district court's determination that Trans–Orient caused its own injury. Having rejected

both grounds on which the district court based its decision, we therefore reverse the dismissal of Trans–Orient's action against Star.

Since the dismissal order came at the end of plaintiff's case on defendant's motion to dismiss under Rule 41(b) of the Federal Rules of Civil Procedure, the order is reversed and the case remanded for further proceedings. *United States Gypsum Co.*, 333 U.S. at 401–02, 68 S.Ct. at 544–45.

### B. *Summary Judgment in Favor of the Sudan*

■ After dismissing the action against Star, the district court granted summary judgment in favor of the Sudan. The court found that Trans–Orient's acceptance of the sub-agency contract from CIDCO, for which it collected a third of the commissions without performing any services, barred Trans–Orient's breach of contract claim against the Sudan. Specifically, in the trial of the action against Star, the district court ruled that the consideration for the Trans–Orient/CIDCO contract was Trans–Orient's acceptance of the appointment of Star as CIDCO's agent without protest. In its summary judgment ruling the district court further held that "Trans–Orient's acceptance of the appointment of CIDCO as the Sudan's agent was part and parcel of that consideration because mere acceptance of Star's appointment served little purpose if Trans–Orient could assert a claim against the Sudan." 736 F.Supp. at 1284. Thus, Trans–Orient was found to have agreed to accept the new agency relationship without complaint in consideration for one-third of the commissions. Finally, by granting summary judgment, the district court also implicitly concluded that the Sudan was an intended third party beneficiary of the Trans–Orient/CIDCO contract and thus was released from any claim based on its contract with Trans–Orient. *Id.*

Trans–Orient contends that the district court improperly granted summary judgment in favor of the Sudan on an erroneous finding of forbearance-consideration and

also resolved disputed issues of fact in deciding the motion. We reject these contentions.

We review the district court's grant of summary judgment *de novo. EAD Metallurgical, Inc. v. Aetna Casualty & Sur. Co.,* 905 F.2d 8, 10 (2d Cir.1990). Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *See generally* Pierce, *Foreword—Summary Judgment: A Favored Means of Summarily Resolving Disputes,* 53 Brooklyn L.Rev. 279 (1987) (discussing general summary judgment principles and their application in the Second Circuit). We consider the record in the light most favorable to the non-movant; however, the non-movant must establish the existence of a genuine issue of material fact for reversal on appeal. *EAD Metallurgical,* 905 F.2d at 10.

While our review of the summary judgment is *de novo,* we agree with appellees that the clearly erroneous standard is also relevant to our consideration of the challenged ruling. The trial court's grant of summary judgment was based in part upon factual findings and conclusions of law it made in the earlier trial against Star. Accordingly, we must review those critical factual findings and may not set them aside unless they are clearly erroneous. Fed.R.Civ.P. 52(a).

We are not persuaded that the district judge clearly erred in finding that CIDCO and Star contracted with Trans–Orient because they " 'were apparently concerned that Trans–Orient would attempt to enforce [the Trans–Orient/Sudan] contract [and] to establish that it had been breached in favor of CIDCO and Star as a consequence of improprieties involving the Sudanese embassy in Washington and CIDCO and/or Star.' " 736 F.Supp. at 1284 (quoting oral ruling in earlier trial against Star). Dobra himself testified on cross-examination that Trans–Orient was offered the contract paying one-third of the commissions for which it was to render no services so that he would "keep [his] mouth shut and do nothing":

Q. During the entire year the contract was with CIDCO, you surely rendered no services to them at all, did you?

A. I was not asked for, that was the purpose of the contract. I was given the silence money.

Q. In other words, you were given the money so that you would accept this arrangement without objection, is that correct?

A. Yes. . . .

Thus, based on Dobra's own testimony, we cannot say that the district court's finding was clearly erroneous.

We next turn, applying now a *de novo* standard of review, to Trans–Orient's claim that the district court erred as a matter of law in granting summary judgment. Trans–Orient claims that the district court violated the "fundamental maxim" that a district court deciding a summary judgment motion " 'cannot try issues of fact; it can only determine whether there are issues to be tried.' " *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir.1987) (quoting *Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1319–20 (2d Cir.1975)). Resolving all ambiguities and drawing all inferences against the moving party, however, we agree with the district court that there were no genuine issues of material fact precluding summary judgment.

■ First, to the extent Dobra's post-trial sworn statements ("At no time since January 3, 1985 . . . did I accept the Sudan's unilateral termination of my five year extension shipping agency contract") conflict with the testimony he gave at trial, we do not find a factual issue. The rule is well-settled in this circuit that a party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing his own prior sworn testimony. *See, e.g., Mack v. United States,* 814 F.2d 120, 124 (2d Cir.1987) (party cannot create genuine issue of material fact with affidavit contradicting prior deposition testimony); *Miller v. International Tel. & Tel. Corp.,* 755 F.2d 20, 24 (2d Cir.) (same), *cert. denied,* 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122

(1985); *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir.1969) (same); *McLaughlin v. Cohen*, 686 F.Supp. 454, 456 (S.D.N.Y.1988) (same).

We also reject Trans–Orient's claim that the district court improperly resolved an issue of fact on the summary judgment motion by finding that Trans–Orient's acceptance of the appointment of CIDCO as the Sudan's agent was "part and parcel" of the consideration supporting the Trans–Orient/CIDCO contract. This was not a new finding of fact by the district judge, but an explication of what was logically implicit in its factual finding made in the Star trial. In our view, the district court's earlier finding that Trans–Orient agreed to accept CIDCO's appointment of Star, which we find was not clearly erroneous based on Dobra's own testimony, was tantamount to a finding during the Star trial that Trans–Orient acquiesced in the Sudan's appointment of CIDCO as well. Thus, in later ruling on the Sudan's summary judgment motion, the district court did not improperly resolve factual issues.

■ Finally, we find unavailing Trans–Orient's claim that the district court erred in holding that Trans–Orient's contract with CIDCO released the obligations of the Sudan, and that the Sudan became a third party beneficiary of that contract. As the district court correctly noted, forbearance to assert a valid claim, if bargained for, is sufficient consideration to support a contract. *See Williamsville Cent. School Dist. v. New York State Urban Dev. Corp.*, 142 A.D.2d 981, 982, 530 N.Y.S.2d 402, 403 (4th Dep't 1988); Restatement (Second) of Contracts § 71 comment d (1981). Dobra testified that the one-third share of the commissions was given as "silence money" so that he would not protest the new agency relationship, and the district court ruled on the basis of Dobra's testimony that the money was paid to secure Trans–Orient's acceptance of the new agency relationship. Thus, there was a sufficient legal and factual basis for the district court to hold that Trans–Orient forbore from asserting its claim against the Sudan.

■ The district court also did not err in implicitly holding that the Sudan became a third party beneficiary of Trans–Orient's promise of forbearance. An intended third party beneficiary will be found when it is appropriate to recognize a right to performance in the third party and the circumstances indicate that the promisee intends to give the third party the benefit of the promised performance. Restatement (Second) of Contracts § 302 (1981). New York has adopted the Restatement approach in determining whether a third party beneficiary exists. *Septembertide Publishing, B.V. v. Stein & Day, Inc.*, 884 F.2d 675, 679 (2d Cir.1989); *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66 N.Y.2d 38, 44–45, 495 N.Y.S.2d 1, 5, 485 N.E.2d 208, 212 (1985). In determining third party beneficiary status it is permissible for the court to look at the surrounding circumstances as well as the agreement. *Septembertide*, 884 F.2d at 679; *Fourth Ocean*, 66 N.Y.2d at 45, 495 N.Y.S.2d at 5, 485 N.E.2d at 212. Moreover, it is well-settled that the obligation to perform to the third party beneficiary need not be expressly stated in the contract. *Vista Co. v. Columbia Pictures Indus., Inc.*, 725 F.Supp. 1286, 1296 (S.D.N.Y.1989); *see also Strauss v. Belle Realty Co.*, 98 A.D.2d 424, 426–27, 469 N.Y.S.2d 948, 950 (2d Dep't 1983) (to enforce promise third party need not be identified in contract but need only show intent of contracting parties to benefit third party), *aff'd*, 65 N.Y.2d 399, 492 N.Y.S.2d 555, 482 N.E.2d 34 (1985).

Applying the above principles to this case, it is clear that the district court correctly found that the Sudan was an intended third party beneficiary of Trans–Orient's promise of forbearance. The intent of CIDCO and Star in entering the agreements with Trans–Orient was, as the district court found, to get Trans–Orient to accept Star's appointment as agent without protest or complaint. The sole conclusion warranted is that the parties intended to give the Sudan the benefit of Trans–Orient's promised forbearance. Trans–Orient moreover clearly manifested its consent to the new relationship and its abandonment

of its previous breach of contract claim against the Sudan, by taking one-third of the commissions without performing any services. Under these circumstances, recognition of a right to performance in the Sudan is necessary to effectuate the intention of the parties.

Because there was no genuine issue of material fact between the parties and the Sudan was entitled to judgment as a matter of law, the district court correctly granted the Sudan's summary judgment motion.

We have considered the remainder of appellant's arguments and find them to be without merit. The judgment dismissing the action against Star is reversed and remanded for further proceedings. The grant of summary judgment in favor of the Sudan is affirmed.