**TRANS–ORIENT MARINE
CORP., Plaintiff,**

v.

**STAR TRADING & MARINE,
INC., Defendant.**

**No. 86 Civ. 5823 (WCC).**

United States District Court,
S.D. New York.

Feb. 7, 1992.

Walker & Corsa, New York City (Nicholas Kalfa, of counsel), for plaintiff.

Odin, Feldman & Pittleman, P.C., Fairfax, Va. (Dexter S. Odin, Sally Ann Hostet-

ler, of counsel), and Kleinberg, Kaplan, Wolff & Cohen, P.C., New York City (Norris D. Wolff, of counsel), for defendant.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

This is an action by plaintiff, Trans–Orient Marine Corporation ("Trans–Orient"), to recover damages from defendant, Star Trading & Marine, Inc. ("Star"), for breach of an agreement entered into on January 10, 1985. A two-day non-jury trial was held before this Court beginning on January 8, 1990. At the conclusion of plaintiff's case, this Court dismissed the action pursuant to Fed.R.Civ.P. Rule 41(b). On appeal, the Court of Appeals for the Second Circuit reversed and remanded the case for further proceedings. On November 25, 1991, the bench trial was resumed. The Court has carefully reviewed the record herein, argument of counsel for the parties, the testimony of the witnesses, as well as the proposed findings of fact and conclusions of law submitted by each side. This Opinion and Order incorporates the Court's findings of fact and conclusions of law as required by Rule 52(a), Fed.R.Civ.P.

## BACKGROUND

On October 14, 1983, Trans–Orient, a New York corporation, entered into a contract with the Embassy of the Sudan to provide shipping agency services for the Sudan in connection with United States government relief programs. Plaintiff's Exh. 28. The program involved here, the P.L. 480 Program, was enacted as Title I of the Agricultural Trade Development and Assistance Act of 1954, 7 U.S.C. §§ 1701–1715. P.L. 480 permits developing nations to purchase surplus United States agricultural products and often involves the use of transportation agents representing the recipient country. The 1983 agreement, effective from October 1, 1984 through September 30, 1989, was signed by Alisan Dobra, President of Trans–Orient, and Mamoun O. Medani, Economic Counselor for the Embassy of the Democratic Republic of the Sudan. Plaintiff's Exh. 28.

On January 3 and 4, 1985, Medani informed Trans–Orient in two letters that, pursuant to an agreement between the Sudan and the United States, a Sudanese private company, Cereals Investment and Development Co. Ltd. ("CIDCO"), had been appointed to assume Trans–Orient's role in dealing with future shipments of wheat and wheat-flour cargoes under the P.L. 480 Program. *See* Plaintiff's Exhs. 34, 35. Those letters also informed Trans–Orient that CIDCO would appoint its own shipping agent in the future. *See id.* On January 10, 1985, CIDCO proceeded to appoint Star as its shipping agent. *See* Plaintiff's Exh. 37.

On the same day, despite Trans–Orient's claim that it was entitled to continue as the exclusive shipping agent for all P.L. 480 commodities, Trans–Orient entered into a one-year sub-agency agreement with CIDCO concerning shipment of the identical wheat and wheat-flour cargoes under the Program. *See* Plaintiff's Exh. 38. Together, these two agreements provided that Star would receive two-thirds of the regular 2½ percent commissions on the freight charges and Trans–Orient would receive one-third of such commissions. *See* Plaintiff's Exhs. 37, 38. Also on January 10, Trans–Orient and Star Trading executed a document which states in its entirety:

> As we are, this afternoon, signing each a separate agreement, with CEREAL INVESTMENT & DEVELOPMENT CO., LTD. (CIDCO) of Sudan, Star Trading & Marine, Inc. as its agent, and Trans–Orient Marine Corp. as its sub-agent, both appointed today, we agree and guarantee to each other that we are in the future [sic] renew our contracts only together and in agreement with each other.

*See* Plaintiff's Exh. 39. This is the agreement that Trans–Orient claims was breached by Star.

This Court found, and the Second Circuit affirmed, that the consideration for the January 10, 1985 agreements was Trans–Orient's acceptance of the new agency relationships in place of the former, without protest or complaint. *See* Tr. dated Janu-

ary 9, 1990, at 209; *Trans–Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 571–72 (2d Cir.1991). As noted by the Second Circuit, "Dobra himself testified on cross-examination that Trans–Orient was offered the contract paying one-third of the commissions for which it was to render no services so that he would 'keep [his] mouth shut and do nothing.'" 925 F.2d at 572.

Notwithstanding Trans–Orient's apparent agreement to accept the new agency relationships without protest or complaint, Trans–Orient almost immediately filed with the U.S. Department of Agriculture ("USDA") a complaint charging various improprieties or illegalities on the part of CIDCO and Star. In addition, in June 1985, Trans–Orient filed suit in the United States District Court for the District of Columbia against Star, alleging, *inter alia,* that both the sub-agency contract and the joint renewal contract were entered into under duress. *See* Defs. Exh. K, Direct Testimony of Alisan Dobra in D.C. Action, at 10. Trans–Orient took the position in that litigation that CIDCO, the Government of Sudan, and Star had all conspired to deprive it of its agency agreement with the Sudan and the monetary gain associated therewith. In April of 1986, District Judge Richey found that Trans–Orient had failed to prove any of its claims by a preponderance of the evidence. *See* Defs. Exh. L.

During the term of the 1985 agreements, and despite its continuing adversarial position towards Star and CIDCO, Trans–Orient received and cashed checks from Star representing one-third of the commissions on the P.L. 480 shipments to the Sudan. Tr. dated January 9, 1990, at 165–66. Trans–Orient performed no services in exchange for these payments.

In late 1985, CIDCO made several efforts to renew the subagency contract with Trans–Orient, provided Trans–Orient withdraw its suit against Star. *See* Tr. dated November 25, 1991, at 62–65, 91–93. Mr. Dobra rejected these offers and countered with a proposal of his own. Mr. Dobra required as conditions to renewal that (1) CIDCO agree to pay Trans–Orient one-half of the commissions, (2) CIDCO name Trans–Orient "co-agent," (3) and CIDCO agree to sign some sort of guarantee to renew Trans–Orient's contract in every year subsequent to the expiration of that contract. *See* Testimony of Saeed Mahammad Sheikh, principal of Star Trading, and Testimony of Salah El–Din El–Zubeir, Managing Director of CIDCO, Tr. dated November 25, 1991 at 63, 91. In both February and May of 1986, CIDCO again approached Trans–Orient and offered it a sub-agency contract on the same terms and conditions agreed to in the January 10, 1985 contract. *See* Tr. dated November 25, 1991, at 93–95. Mr. Dobra again refused CIDCO's advances, insisting on CIDCO's acceptance of the three conditions which had been previously proposed. *See id.*

In February 1986, Star entered into a short-term contract with CIDCO to process part of the P.L. 480 shipment without the participation of Trans–Orient as sub-agent. Beginning in May 1986, Star entered into long-term shipping contract with CIDCO which continued through September 1987, again without the participation of Trans–Orient. *See* Tr. dated November 25, 1991, at 95–96. Plaintiff received no commissions on P.L. 480 wheat and wheat-flour shipments subsequent to January 10, 1986.

Trans–Orient brought this diversity action on July 28, 1986 alleging, *inter alia,* that Star "acted and continues to act as CIDCO's agent and [to] collect full brokerage commissions in breach of the January 10, 1985 [Star/Trans–Orient] agreement." Am. Complaint at ¶ 11. After a two-day hearing, this Court granted Star's motion to dismiss under Fed.R.Civ.P. Rule 41(b), finding that "Trans–Orient was not willing to continue on the basis established by the January 10, 1985 agreements;" therefore, "there was no breach of the January 10, 1985 agreement between Trans–Orient and Star when Star proceeded independently of Trans–Orient to make a contract with CIDCO." Tr. dated January 9, 1990, at 212. Concluding that there was no indication in the record that Trans–Orient either received or rejected an unconditional offer to renew the relationship existing under the January 10, 1985 agreements, the Second

**210**

Circuit reversed and remanded the case for further proceedings.

## DISCUSSION

The January 10, 1985 Star/Trans–Orient contract provided that Star and its sub-agent, Trans–Orient, guaranteed to one another that they would "in the future renew [their] contracts only together and in agreement with each other." Plaintiff argues that the sole issue before this Court is whether Star entered into any further agreements with CIDCO subsequent to 1985 without the participation of Trans–Orient—i.e., without Star paying plaintiff a sum representing one-third of the commissions earned pursuant to contracts between CIDCO and Star subsequent to 1985. Plaintiff's argument is based on the following language in the Second Circuit Opinion in this action:

> Trans–Orient's breach of contract claim against Star is based on their simple one-sentence contract, which the district court correctly construed as 'provid[ing] that Star would not enter into any further agreement with CIDCO ... without the participation of Trans–Orient.'

925 F.2d at 569. Since it is uncontradicted that Star entered into contracts with CIDCO in 1986, 1987, 1988, and 1989 without notifying or obtaining the consent of Trans–Orient, plaintiff maintains that it has proven its case against Star and is entitled to one-third of the commissions for those years. Plaintiff considers irrelevant to its action against Star for breach of the January 10, 1985 one-sentence agreement the issue of whether Trans–Orient received and rejected offers of renewal from CIDCO.

The Court cannot agree with Trans–Orient's reading of the Second Circuit Opinion in this case. Had the Court of Appeals construed the joint renewal agreement so as to render Star liable to Trans–Orient for one-third of the commissions paid on any subsequent contract between Star and CIDCO, regardless of the behavior of Trans–Orient, it would not have bothered to address, as a critical issue, whether Trans–Orient had been offered an opportunity to renew. On the contrary, it would have entered judgment in favor of Trans–Orient instead of reversing and remanding the case for further proceedings.

Interpreting the contract in the manner urged by plaintiff would frustrate the business purpose for which the contract was entered. The January 10, 1985 agreement between Trans–Orient and Star contemplated concerted action to renew their respective contracts with CIDCO. Implied in that agreement was a predicate duty of good faith and cooperation. *Lowell v. Twin Disc, Inc.*, 527 F.2d 767, 770 (2d Cir.1975). As noted by the Second Circuit:

> 'Persons invoking the aid of contracts are under an implied obligation to exercise good faith not to frustrate the contracts into which they have entered.' 'It is likewise implied in every contract that there is a duty of cooperation on the part of both parties. *Thus, whenever the cooperation of the promisee is necessary for the performance of the promise, there is a condition implied that the cooperation will be given.*'

*Id.* (citations omitted) (emphasis in original). *See also Filner v. Shapiro*, 633 F.2d 139, 143 (2d Cir.1980) ("In every contract there is an implied covenant of good faith and fair dealing which precludes each party from engaging in conduct that will deprive the other party of the benefits of their agreement.") Having refused to renew the January 10, 1985 contracts on the same terms and conditions originally agreed to, Trans–Orient breached the duty of good faith and cooperation owed Star and effectively released Star from its obligation to forbear from contracting with CIDCO in the absence of participation by Trans–Orient.

As previously noted, the January 10, 1985 Star/Trans–Orient agreement provided that the parties guaranteed to one another that they would "in the future renew [their] contracts only together and in agreement with each other." In *Trans–Orient*, the Second Circuit explained that "[r]enewal normally involves 'a continuation of the relationship on essentially the same terms and conditions as the original

contract.' " 925 F.2d at 570. Plaintiff argues that Mr. Zubeir contradicted himself several times during his testimony when he admitted that CIDCO's offers to Trans–Orient were in the context of settlement discussions during the 1985 Washington, D.C. trial, implying that such offers required that Trans–Orient withdraw its suit against Star. While Mr. Zubeir did indicate that Star's earlier offers were conditioned. upon Trans–Orient's dropping of the suit, the Court credits his testimony that his later offers contained no such condition. Moreover, the imposition of that condition was merely an insistence on compliance with the implied but admitted terms of the contractual arrangement—forbearance from complaining about the new agency relationships—and Trans–Orient's refusal to accept that condition removed the only consideration which Trans–Orient had furnished under the contracts.

Mr. Dobra not only rejected CIDCO's offers to renew, he also countered with new terms which would require Trans–Orient's elevation to the status of a co-agent receiving 50 percent of the commissions. Obviously, he had no interest in renewing the subagency relationship on the terms of the January 10, 1985 contracts. Indeed, the continuation of his protest to the USDA and his litigation against Star clearly show his objective had instead become the cancellation of Star's appointment as CIDCO's agent and the reclamation of that status for Trans–Orient.

Trans–Orient's refusal to join in a renewal of Star's agency contract with CIDCO on the terms and conditions as originally agreed to amounted to a material breach of the joint renewal contract between Trans–Orient and Star which discharged Star from its obligations under that contract. *Cf. Printers II, Inc. v. Professionals Publishing, Inc.,* 784 F.2d 141, 148 (2d Cir. 1986) ("[I]f either party believes there has been a failure of the constructive condition of performance, he is entitled to cease performing, subject only to the duty to pay contractual damages if his belief is later adjudicated to be erroneous."); *Jafari v. Wally Findlay Galleries,* 741 F.Supp. 64, 68 (S.D.N.Y.1990) ("[W]here a party materially breaches, he has failed to substantially perform the contract, and the other party is discharged from performing his obligation.").

## CONCLUSION

Plaintiff has failed to establish by a preponderance of the evidence that Star Trading breached its agreement with Trans–Orient. Judgment shall therefore be entered in favor of defendant. Each side shall bear its own costs.

SO ORDERED.