BEAR U.S.A., INC., Plaintiff,

v.

William KIM, et al., Defendants.

No. 97 Civ. 0574(LAK).

United States District Court,
S.D. New York.

Feb. 24, 1998.

Pasquale A. Razzano, Timothy J. Kelly, Fitzpatrick, Cella, Harper & Scinto, for Bear U.S.A., Inc.

S. Henry Cho, for Defendants William Kim, Dura–Tex, Inc., Family Off Price Shop, Inc., Shoe Tree, Inc.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This case is a sequel to *Bear U.S.A., Inc. v. A.J. Sheepskin & Leather Outerwear, Inc.,* 909 F.Supp. 896 (S.D.N.Y.1995) (hereinafter *"A.J. Sheepskin"*). Bear U.S.A., Inc. ("Bear USA") there obtained a preliminary injunction against infringement of its Bear trademarks, which have been used with conspicuous success on parkas, boots and perhaps other products and then settled the case on advantageous terms. *A.J. Sheepskin,* however, did not eliminate efforts by competitors to benefit from the good-will generated by plaintiff through the use of trademarks employing the word "Bear" in ways which, plaintiff claims, are deceptive and dishonest. This action concerns one such alleged attempt.

### Facts

This matter now is before the Court only on plaintiff's motion for partial summary judgment canceling U.S. Trademark Registration No. 1,881,551 on the ground that the owner's allegedly naked licensing of the mark worked an abandonment. In consequence, the Court focuses only on the facts pertinent to disposition of this limited issue without sketching the entire context of this action and its relationship to the previous lawsuit.

The mark in question is "Bear Mountain," which is owned by Shoe Tree, Inc. ("Shoe Tree"), a Pennsylvania corporation owned by Andrew Crawford and his wife, that operates a retail shoe store.[1] It applied for registration of the mark in 1993. Registration followed on February 28, 1995. As far as this record discloses, it used the mark only on boots sold in its store and, with the exception of the license here at issue, never licensed it.

This Court decided the preliminary injunction motion in *A.J. Sheepskin* on November 22, 1995. In early March 1996, Shoe Tree entered into an agreement licensing the use of the Bear Mountain mark for footwear and clothing to Dura–Tex, Inc. ("Dura–Tex"), the principal of which is one William Kim. The license agreement provided that Shoe Tree

---

1. Defendants' counsel contended at oral argument that Shoe Tree engaged also in the whole-
sale end of the shoe business. No such evidence appears in the record on this motion.

would receive the greater of $16,000 per year and 8 percent of the FOB price of footwear and clothing made under the license. The license in hand, Dura–Tex altered the Bear Mountain mark in a manner alleged to render it confusingly similar to Bear USA's marks and applied it to parkas and boots sold in direct competition with Bear USA's products.

The plaintiff now contends that the arrangement between Shoe Tree and Dura–Tex is a naked license, i.e., a license in which Shoe Tree simply sold the right to use the Bear Mountain name without controlling the nature or quality of the goods to which the mark was to be applied, and that Shoe Tree thus abandoned the mark and rendered cancellation appropriate. It therefore is important to focus quite precisely on the evidence relating to Shoe Tree's control, or lack thereof, over the goods to which its mark has been applied. It is quickly summarized:

1. The license agreement itself is utterly silent on the point. There is no suggestion that the goods were to be made to Shoe Tree's specifications, that they were to meet any quality standards, that Shoe Tree retained the right to inspect the goods or to insist that they conform to any criteria, or that Shoe Tree had any interest in the goods beyond its right to receive royalties.

2. The impression conveyed by the license agreement was borne out at the deposition of Mr. Crawford. He testified in relevant part as follows:

"Q Did you have an agreement with Mr. Kim that you would exercise some sort of quality control over his products? A I can't quote the licensing agreement verbatim, but I didn't specify that I would have to, you know, okay this or that at the time.

"Q And in any event, you, never would have been able to, since you had never

seen one of his products before December 23, [1996], right? A That's correct."[2]

\* \* \* \* \* \*

"Q Did you have any agreement with him [Kim] about how he was going to have the clothing or boots made having the Bear Mountain mark? A No.

"Q Did you have any understanding with him? A No, just that, you know, it's Bear Mountain and that's it.

"Q So, you really had no idea who was going to be making the clothing or the boots? A No."[3]

3. In his affidavit in opposition to this motion, however, Mr. Crawford reversed field. He swore that he "actively attempted to supervise [Dura–Tex's] use of [the] 'Bear Mountain' mark," that he caused Dura–Tex to remove a logo containing an improper design at a March 1996 trade show, that he repeatedly sought product samples in the period March through December 1996 so he "could supervise and control products vended under [Shoe Tree's] mark," that he rejected certain samples in December 1996 and February 1997, and that he approved footwear at a February 1997 trade show.[4] He asserted also that Shoe Tree had the right to control Dura–Tex's use of its mark and that it did so.[5]

4. William Kim submitted an affidavit in opposition to the motion in which he stated that Dura–Tex was obliged to provide, and in fact provided, sample styles to Shoe Tree and that Shoe Tree had the right to control Dura–Tex's use of the mark and in fact supervised and controlled the quality of the goods.[6]

*Discussion*

▇ A trademark is a designation of origin.[7] "It serves to inform the public of the source of the goods."[8] In consequence, it cannot be transferred except in connection

2. Crawford Dep. 48.

3. *Id.* 137–38.

4. Crawford Aff. ¶¶ 9–16.

5. *Id.* ¶ 20.

6. Kim Aff. ¶¶ 11–15.

7. *Amoskeag Manufacturing Co. v. D Trainer & Sons,* 101 U.S. 51, 53, 25 L.Ed. 993 (1879).

8. *Liebowitz v. Elsevier Science, Ltd.,* 927 F.Supp. 688, 695 (S.D.N.Y.1996).

with a business.[9] Nor may it be licensed unless the licensor retains "some degree of control over the quality of the goods under the trademark by the licensee."[10] The parties therefore agree that Shoe Tree abandoned its mark, and rendered it subject to cancellation, unless it retained the requisite degree of control over the quality of the goods sold by Dura–Tex under it.

Plaintiff argues that it is entitled to summary judgment on this issue on the theory that the license agreement is silent, that Mr. Crawford admitted in his deposition that he neither controlled nor had the right to control the quality of the goods, and that his affidavit in opposition to this motion must be disregarded pursuant to the established principal that a party may not "create a material issue of fact by submitting an affidavit disputing his own prior testimony."[11] Defendants respond that their affidavits demonstrate that there is a genuine issue as to whether Dura–Tex's use of the mark was supervised by Shoe Tree.

Were Mr. Crawford's affidavit the only evidence in opposition to the motion, summary judgment probably would be appropriate. While certain of the responses at his deposition might be reconcilable with his affidavit,[12] others clearly are not. Certainly it is hard to see how one could square Mr. Crawford's testimony that the only understanding he had with Mr. Kim was "just that, you know, it's Bear Mountain and that's it" with the claim in his affidavit that "Shoe Tree ... reserved the right to control Dura–Tex's use of Shoe Tree's 'Bear Mountain' mark ..." But the Crawford affidavit is not the only evidence.

Mr. Kim's affidavit asserts that Shoe Tree controlled the quality of the goods and that it repeatedly communicated on the subject both orally and in writing. Plaintiff would have the Court disregard these assertions as conclusory. While some are, others are not.

Plaintiff's position is sympathetic. The likelihood that the owner of a retail shoe store in Dauphin County, Pennsylvania, controlled the quality of parkas and boots made abroad in the tens of thousands would be somewhat remote, even without regard to Mr. Crawford's deposition testimony. In view of that testimony, one would be tempted to conclude that the affidavits in opposition to this motion are simply a device being used to postpone the day of judgment. The probability that this is so is heightened by a memorandum from Mr. Crawford to Mr. Kim, dated in January 1997, which is susceptible of the inference that the defendants here are relying on the cost of protracted litigation as a weapon in an effort to capitalize on plaintiff's goodwill and, in Mr. Crawford's words, "make a shit load of money on our BEAR." But the Court's role on a motion for summary judgment is not to weigh the evidence and award judgment to the party with the stronger case, but simply to decide whether there is an issue for a trier of fact. In view of Mr. Kim's affidavit and the limited record now before the Court, the question whether Shoe Tree retained sufficient control over the quality of the goods to avoid abandonment of its mark cannot be decided on this motion.[13]

### Conclusion

Plaintiff' motion for summary judgment is denied.

SO ORDERED.

---

9. *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97–98, 39 S.Ct. 48, 63 L.Ed. 141 (1918); *Capital Temporaries, Inc. of Hartford v. Olsten Corp.*, 506 F.2d 658, 663 (2d Cir.1974); *Liebowitz*, 927 F.Supp. at 696.

10. *Liebowitz*, 927 F.Supp. at 696 (citing *Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358, 367 (2d Cir.1959)).

11. *Trans–Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572 (2d Cir.1991).

12. For example, a licensor perhaps could exercise the requisite degree of quality control without knowing the identity of entities manufacturing the goods for a licensee.

13. The Court, however, does not exclude the possibility that the issue may be resolved at trial on a Rule 50 motion, assuming *arguendo* that the issue is tried to a jury.