**LEE LOI INDUSTRIES, INC.,**
Plaintiff–Appellant,

v.

**IMPACT BROKERAGE CORP.,**
Defendant–Appellee.

**No. 05 CV 10788 VM.**

United States District Court,
S.D. New York.

Feb. 7, 2007.

Leonard Kreinces, Kreinces & Rosenberg, P.C., Westbury, NY, for Plaintiff-Appellant.

## DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Lee Loi Industries ("Lee Loi") has appealed a December 5, 2005 reparation order rendered by a Judicial Officer of the United States Department of Agriculture ("USDA") in favor of defendant Impact Brokerage Corp. ("Impact"), awarding Impact $6,451.20 plus interest costs. A formal inquiry with USDA was initiated by Impact through formal complaint after an informal inquiry, also brought by Impact, concluded that Lee Loi was likely at fault. Although Lee Loi participated in the informal investigation, it did not answer Impact's formal complaint and was found in default. *See Impact Brokerage Corp v. LeeLoi Industries, Inc.* PACA N–05–142, PACA Docket RD–06–040 (Dec. 5, 2005) (the "Reparation Order"). Lee Loi timely filed an appeal with this Court on December 27, 2005.

## I. BACKGROUND [1]

Impact claims that Lee Loi Industries received, on June 29, 2004, a shipment of 1,008 cartons of corn that Lee Loi ordered previously, and was never paid for the shipment. Lee Loi claims that it neither ordered nor received the shipment of corn. Impact demanded payment from Lee Loi, who continued to deny receipt of the corn and refused payment. After seven months, Impact filed an informal petition with the USDA to recover payment.

Since the Reparation Order was entered by default, "the facts alleged in the formal Complaint [were] ... adopted as findings of fact." Reparation Order at 1. The facts alleged by Impact in the formal complaint to the USDA were: that Impact sold, through written and oral contract, to Lee Loi, a truckload of corn on June 25, 2004; that the corn was shipped to Lee Loi on June 29, 2004; that Lee Loi received the corn on the same day; and that Lee Loi failed and refused to pay the price of $6,451.20 for the shipment. Also alleged in the complaint through incorporation were forty-two pages of exhibits, including: Invoices from Impact documenting the sale; a third party manifest detailing a delivery from Jody Desomma ("Desomma"), president of Impact, to Lee Loi industries on June 29, 2004; a statement from truck driver Tom Miller ("Miller") declaring that he delivered the corn to Lee Loi; and fax/phone records showing frequent contact between Impact and Lee Loi during the specified time. *See* Reparation Order, Attach. 1–42.

Impact's formal complaint came after an investigation by the USDA, in which Lee Loi did participate. The informal opinion which resulted from that investigation was that, "[b]ased on a preponderance of the evidence, it appears that [Lee Loi] did receive the yellow corn in question and that Impact Brokerage is entitled to payment." *Id.* at Ex. 7–1.

---

**1.** The following factual summary is based on the parties' submission to the Court, specifically: Petition in Support of Appeal Pursuant to 7 U.S.C. § 499g(c) ("Pet."); Memorandum of Law in connection to the Petition in Support of Appeal Pursuant to 7 U.S.C. § 499g(c), filed by Plaintiff, dated Aug. 1, 2006 ("Pl. Mem."); Affidavit of Chae Yun White, dated Aug. 1, 2006 ("White Aff. I"); Affidavit of Jimmy Hong, dated Jan. 19, 2006 ("Hong Aff."); Memorandum of Law in Response to Petition in Support of Appeal Pursuant to 7 U.S.C. § 499g(c), filed by Defendant, dated Sept. 15, 2006, ("Def.Mem."); Affidavit of Tom Miller, dated Sept. 1, 2006 ("Miller Aff."); Affidavit of Jody DeSomma, dated Sept. 14, 2006 ("DeSomma Aff."); Memorandum of Law, filed by Plaintiff, dated Oct. 4, 2006 ("Rep.Mem."); Affidavit of Chae Yun White, dated Sept. 29, 2006 ("White Aff. II"), and; Affidavit of Young Ok Lee ("Lee Aff.") Except where specifically quoted, no further reference to these documents will be made.

## II. DISCUSSION

### A. STANDARD OF APPEAL UNDER § 499g AND SUMMARY JUDGMENT STANDARD

Appeals of reparation orders are governed by PACA § 499g(c), which provides:

Such suit in the district court shall be a trial de novo and shall proceed in all respects like other civil suits for damages, except that the findings of fact and order or orders of the Secretary shall be prima-facie evidence of the facts therein stated.

7 U.S.C. § 499g(c).

■ Generally, the party petitioning for an appeal has the burden of production of evidence that rebuts the findings of fact by the Secretary. *B.T. Produce Co., Inc. v. Robert A. Johnson Sales, Inc.,* 354 F.Supp.2d 284, 288 (S.D.N.Y.2004) ("[T]he nonmoving party[ ] bears an initial burden of production at trial to call into question the prima facie validity of the Reparation Order."); *see also Frito–Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1032 (D.C.Cir. 1988). While neither party has moved for summary judgment, the Court may determine that a case is ripe for summary judgment, *sua sponte,* if the losing party has been given adequate notice and opportunity to present all evidence. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In the Court's order of June 27, 2006, Lee Loi and Impact were both been given adequate notice of the Court's intent to decide the case on the papers and have submitted all evidence accordingly.

Thus, as Impact is "armed with the[ ] factual findings and order of reparation" from the USDA, "the burden or production shift[s] to [Lee Loi] to come forward with some credible evidence to create a genuine issue of fact for trial." *W.M. Ercanbrack Co., Inc. v. Sol Salins, Inc.,* 844 F.Supp. 817, 818 (D.D.C.1994) (finding appellant, challenging default reparations order, failed to designate specific facts before the District Court sufficient to create a genuine issue for trial).

■ Ultimately, the "prima facie effect given to the Secretary's findings ... do nothing more than satisfy [Impact's] burden of production under Rule 56." *Genecco Produce, Inc. v. Sandia Depot, Inc.,* 386 F.Supp.2d 165, 172 (W.D.N.Y.2005). The Reparation Order does not "take away the right of either party to introduce any pertinent or relevant evidence." *Frito Lay,* 363 F.2d at 1033. Lee Loi does introduce evidence to this Court not considered by the USDA, specifically several employee affidavits with supporting exhibits. The Court, however, after reviewing these affidavits along with the record below, concludes that Lee Loi fails to create a "genuine issue as to any material fact." *Celotex,* 477 U.S. at 326, 106 S.Ct. 2548. Thus, for the reasons discussed below, the Court denies Lee Loi's petition and affirms the USDA's reparation order.

### B. ANALYSIS OF OFFERED FACTUAL EVIDENCE

■ Lee Loi asserts it never ordered the shipment of corn that was allegedly delivered on June 29, 2004. *See* Lee Aff. at ¶ 2, 4 ("I ordered all produce for Lee Loi[,]" "I did not order the produce which was allegedly delivered on June 29, 2004."). However, as Lee Loi itself points out in its Memorandum of Law, the delivery of the corn is the operative issue. *See* Rep. Mem. at 1 ("We submit that the seller did not 'deliver' the produce in accordance with the contract and that created the issue of fact in this case.").

Lee Loi argues that it did not need the shipment in question since it had received 1,008 cartons of corn from Impact two days prior to the June 29, 2004 shipment. In support, Lee Loi states it has never needed more than 1,008 cartons on a week-

ly basis. *See* White Aff. I at ¶ 5. However, Lee Loi undercuts its own argument by submitting an invoice of a purchase of 420 cartons delivered by Impact on July 1, 2004 (originally scheduled for June 28, 2004), just four days after the undisputed shipment. *See* Pl. Mem., Ex. "E". Lee Loi attempts to dismiss this conflict by stating that 420 cartons is "not a significant amount of corn." *See* Lee Aff. at ¶ 3. ("The 420 [cartons] referred to by Impact is a 'drop in a bucket.' I could have bought that corn from the Hunts Point Market where we do business.... One thousand eight (1,008) packages fill up an entire trailer ..."). But, no matter how insignificant Lee Loi claims the 420 cartons were, it adds up to 1,428 cartons for the week, which exceeds Lee Loi's alleged capacity by nearly 42 percent.

Lee Loi next avers that Invoice No. 3501, which confirms the delivery and receipt of the shipment at issue on June 29, 2004, does not contain the usual markings that would indicate that it was handled by a Lee Loi employee. *See* White Aff. I at ¶ 7. The invoice in question has two scribbled lines on the bottom right corner, apparently signifying a signature. *See* Pl. Mem., Ex. "B". Lee Loi points to Invoice No. 3500, corresponding to the undisputed sale on June 26, 2004, as the prototypical example of how an invoice should appear after being handled by a Lee Loi employee. *See* Pl. Mem., Ex. "C". This invoice contains on it a series of twenty four iterations of the number "42" broken up by plus signs, which, according to Lee Loi, signifies the process of counting the amount of corn in each carton. *See* White Aff. I at ¶¶ 7. Lee Loi states that this counting process "is standard procedure and is done contemporaneously with the delivery of the corn." *See* White Aff. I at ¶ 7.

However, Impact points out that Invoice No. 3507, relating to the undisputed shipment on July 1, 2004, lacks any similar count. *See* Def. Mem. at 11. While there are multiple copies of Invoice No. 3507, none of them appear to have the type of count labeled as "standard procedure" "done contemporaneously with the delivery of the corn." The third and fourth copy of Invoice No. 3507 do contain a handwritten remark that reads "10 pallets Exchanged" as well as a stamped and signed portion beginning "Lee Loi Inc." *See* Pl. Mem., Ex. "E".

Lee Loi also presents an affidavit by Jimmy Hong, who was a foreman for Lee Loi at the time, stating that the mark on Invoice No. 3501 was not his signature, and that he was "the only one in charge of receiving produce on behalf of Lee Loi." *See* Hong Aff. at ¶¶ 2, 3. Hong attached a page onto which he signed his name ten times in order to provide his signature. *See* Hong Aff., Attach.

Impact counters that in the investigation preceding Impact's formal complaint before the USDA, Lee Loi represented that it had "a total of three employees (foremen) who were responsible for receiving ordered goods". *See* Def. Mem. at 11–12; Def. Mem., Ex. 4. Impact further notes that Invoice No. 3500, confirming the receipt of the undisputed shipment on June 27, 2004, bears a different signature from Hong's. *See* Def. Mem. at 12; Pl. Mem., Ex. "C". It also appears that Hong's signature is missing from any of the different copies of Invoice No. 3507, the undisputed shipment of July 1, 2004, submitted by Lee Loi. *See* Pl. Mem., Ex. "E".

Finally, Lee Loi asserts that the shipment, which would have been made on a Tuesday, was abnormal because it was rare for it to receive shipments during the week. *See* White Aff. II at ¶ 2. Lee Loi points to the undisputed shipment on June 27, 2004, made on a Sunday, as an example of the "usual time when [it] receive[s]

product." *See* White Aff. II at ¶ 2. Howeverer, the other undisputed shipment in this case, on July 1, 2004, was made on a Thursday. *See* Pl. Mem., Ex. "C". Lee Loi gives no explanation for the variant delivery day of that shipment.

Lee Loi does little to show that the invoice or delivery at issue was abnormal and its own assertions are clearly undercut by its statements and pleadings. Two deliveries are undisputed, while one is in contention. The pleadings contain three different invoices, none of which appear to be consistent, other than the uniform nature given to them as standard Impact invoices. Each invoice appears to contain a different signature. Each was delivered on different days of the week: Sunday, Tuesday, and Thursday. None of Lee Loi's claims as to the atypicality of the invoice and timing of the delivery in dispute amount to evidence sufficient to create a genuine issue of material fact.

Lee Loi points out that Miller, driver of the delivery truck, does not identify the foreman who received the shipment by name nor by description of any kind. *See* White Aff. II at ¶ 5. Nor does Miller state anything to confirm that he in fact unloaded his shipment at Lee Loi instead of to another person posing as Lee Loi, as a possibility of wrong direction or theft may exist. *See* White Aff. II at ¶ 6. However, to effectively rebut the affidavit, they must present persuasive competing affidavits or other evidence to show that no delivery was made.

■ Lee Loi has only presented an affidavit from one foreman out of three that could have possibly taken in the shipment, and an affidavit from Lee Loi's chief operating officer asserting that he did not order the shipment at issue and would not have ordered such a shipment at such a

time. As discussed above, these affidavits contain contradictions this court cannot ignore. While the Court may not assess credibility on summary judgment, if the evidence is contradictory or implausible, it may be disregarded. *See Trans–Orient Marine Copr. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572 (it is well-settled in Second Circuit that self-serving and contradictory affidavits cannot defeat motion for summary judgment); *Jeffreys v. Rossi*, 275 F.Supp.2d 463, 476–77 (S.D.N.Y.2003) ("The rationale underlying the rule that contradictory evidence may be disregarded is that a party cannot rely upon implausible testimony to create a triable issue of fact."). Lee Loi's contradictory evidence fails to effectively rebut Miller's affidavit that he delivered the shipment.

Lee Loi's defense is ultimately that Impact cannot prove delivery. Lee Loi's cites *Longo v. Employer's Liability Assurance Corp., Ltd.*, 29 N.Y.2d 860, 328 N.Y.S.2d 169, 278 N.E.2d 340 (1971) and *Olinkraft, Inc. v. Fairbairn Lumber Corp.*, 76 A.D.2d 956, 428 N.Y.S.2d 735 (3d Dept.1980) for the proposition that "failure to show delivery is a sufficient issue of [f]act requiring a trial." *See* Rep. Mem. at 2. But, Miller's affidavit states that he "handed the *foreman* [his] papers and saw him sign them." *See* Miller Aff. A cite by the USDA in the informal inquiry stage of this case is informative here, stating that in previous PACA decisions "an affidavit from the trucker would have constituted independent evidence" of delivery in the face of denial of the delivery.[2] *See* Reparation Order, Ex. 4 (*quoting Nobles v. Peraino*, 46 Agric. Dec. 683 (1987)).

The final factual question that the Court must address is the Hunts Point Terminal Market manifest for June 29, 2004. *See*

---

**2.** It is worth noting that Miller was not a Impact employee, but employed by Target Interstate Systems Inc., and thus an arguably disinterested third party. *See* Def. Mem. at 12.

Reparation Order, Attach. at 4. The manifest itself is under the seal of the Hunts Point Terminal Market, is dated June 29, 2004, and lists a delivery from Jody Desomma, president of Impact, to Lee Loi. *Id.* Impact asserts that this manifest is third party evidence of the delivery to Lee Loi. *See* Def. Mem. at 7. Lee Loi, in a letter response to the USDA as part of the informal inquiry, states that "[a] copy of the manifest was provided originating from the Hunts Point Terminal Market, however this does not provide any proof that the goods in question were delivered to our warehouse." [3] *See* Reparation Order, Ex. 8. Impact has offered evidence that the goods in question where delivered to Lee Loi by Miller, who unequivocally stated that he delivered them to a Lee Loi foreman, and the manifest represents additional evidence that on June 29, 2004 the Hunts Point Terminal Market's records indicate that Lee Loi received at 12:52 p.m. a shipment from Desomma. Lee Loi has failed to effectively rebut this evidence.

Consequently, based on the presentation of facts discussed above, the Court concludes that Lee Loi's appeal raises no issue of material fact, and that summary judgment in favor of Impact is warranted.

### III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the appeal of plaintiff-appellant Lee Loi Industries, Inc. (Docket No. 1) from the United States Department of Agriculture's Reparation Order dated December 5, 2005 ("Reparation Order") is DENIED and the Reparation Order in the case underlying this appeal is AFFIRMED.

**SO ORDERED.**

---

**3.** The Reparation Order also contains a letter dated August 5, 2004 from Lee Loi to an unidentified recipient describing charges on a manifest that Lee Loi claims do not belong to it. *See* Reparation Order, Ex. "3–5" However, the letter does not have the manifest attached and it is not clear whether this letter responds to the Hunts Point Terminal Market manifest. The letter does contain language stating that "the items that are marked with a star are charges that definitely do not belong to us." There is a copy of the Hunts Point Terminal Market manifest with a star on it, but the star is not indicated on the delivery from Impact. *See* Reparation Order, Attach. at 4.